**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| LOOMIS SAYLES TRUST COMPANY, LLC, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CITIGROUP GLOBAL MARKETS INC.<br><br>    Defendant. | Civil Case No. 22-cv-6706 |

## CLASS ACTION COMPLAINT

Plaintiff Loomis Sayles Trust Company, LLC ("LSTC"), on its own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against Citigroup Global Markets Inc. ("Citigroup" or "Defendant") for its failure to achieve best execution in connection with trades it executed on March 18, 2022 that resulted in excess of $70 million in damages.

### INTRODUCTION

1.  Defendant was engaged as broker by LSTC and Loomis, Sayles & Company, L.P. ("Loomis"), an investment advisory firm, on March 18, 2022 to execute several large orders (the "March 18 Orders") for LSTC, as trustee to certain investments trusts, and Loomis clients for whom Loomis serves as an investment adviser (the "Loomis Clients"). Included with the March 18 Orders were orders to buy 780,856 shares in Shopify, Inc. ("SHOP") and sell 5,236,139 shares in Colgate-Palmolive Company ("CL") (together, the "Affected Orders"). LSTC and Loomis directed Citigroup, through its trader Joseph Chiomastro ("Chiomastro"), to conduct appropriate market liquidity analysis and use its discretion to execute the March 18 Orders in a

1

manner that would not materially impact the prices at which the securities were purchased or sold. LSTC and Loomis expressed that the Affected Orders did not need to be completed that day in the event that Citigroup determined that there was insufficient liquidity to complete them without materially impacting prevailing market prices. Citigroup accepted the Affected Orders and agreed to execute as directed. Citigroup, however, failed to comply with LSTC and Loomis' instructions and breached its obligations, including its duty of best execution. Citigroup, in violation of its obligations, failed to conduct any meaningful liquidity analysis; placed the entirety of the Affected Orders into the closing auction; flooded the market with those orders; caused artificial price dislocation; made no attempt to cancel or reduce the size of the Affected Orders pursuant to New York Stock Exchange ("NYSE") rules; and failed to involve the NYSE and/or the Designated Market Maker ("DMM") to suspend the auction and supplement it with more liquidity to ensure a reasonable closing price. Citigroup placed the entirety of the Affected Orders into the closing auction, which resulted in execution at artificially dislocated prices. Citigroup's breaches caused damages to Plaintiff and Loomis Clients that participated in the trades of SHOP and/or CL executed by Citigroup on March 18, 2022 (the "Class"), which are estimated in excess of $70 million.

## THE PARTIES

### Loomis Sayles Trust Company, LLC

2.  Plaintiff LSTC serves as trustee for the Loomis Sayles Trust Company, LLC Collective Trust for Employee Benefit Plans (the "Collective Trust") and does so pursuant to the Declaration of Trust, adopted effective as of February 13, 2007, as amended and restated effective as of October 20, 2008, and as further amended as of September 15, 2012, December 1, 2016, and October 30, 2020 (the "Collective Trust Declaration").

3. LSTC has legal standing to sue for losses sustained by the Collective Trust.

4. Section 3.1 of the Collective Trust Declaration provides that "[t]itle to all assets held in the Collective Trust shall be vested in the Trustee [LSTC]."

5. Section 3.3 of the Collective Trust Declaration provides:

> The Trustee shall have the following powers and authority in the management and administration of each Fund, to be exercised by the Trustee in its discretion or, to the extent permitted by the Trustee, to be exercised by an investment adviser, if any, under the ultimate supervision and responsibility of the Trustee . . . (k) To settle, compromise, or submit to arbitration any claims, debts, or damages due or owing to or from the Collective Trust; to commence or defend suits or legal proceedings whenever, in the Trustee's judgment, any interest of the Collective Trust so requires; and to represent the Collective Trust in all suits or legal proceedings in any court or before any other body or tribunal.

6. The Loomis Sayles Large Cap Growth Trust, Loomis Sayles Global Growth Trust, and Loomis Sayles All Cap Growth Trust (the "Collective Funds") are each investment funds maintained within the Collective Trust, and established pursuant to Section 4.1 of the Collective Trust Declaration.

7. On March 18, 2022, Defendant executed trades on behalf of the Collective Funds, and purchased 77,067 shares of SHOP.

8. On March 18, 2022, Defendant executed trades on behalf of the Collective Funds, and sold 545,389 shares of CL.

9. In total, Defendant's failures to achieve best execution in connection with the Affected Orders caused approximately $7.4 million in damages to the Collective Trust, for which LSTC has standing to sue.

10. LSTC is not a citizen of New York for diversity purposes.

11. LSTC is a limited liability company chartered by the State of New Hampshire.

3

12. The sole member of LSTC is Loomis, a limited partnership organized in the State of Delaware.

13. The general partner of Loomis is Loomis, Sayles & Company, Inc., which is incorporated and has its principal place of business in the Commonwealth of Massachusetts.

14. The sole limited partner of Loomis is Natixis Investment Managers, LLC, which is a limited liability company organized in the State of Delaware. Natixis Investment Managers, LLC's sole member is Natixis Investment Managers U.S. Holdings, LLC, another limited liability company organized in Delaware.

15. Natixis Investment Managers U.S. Holdings, LLC has two members: Natixis Investment Managers and Natixis Investment Managers Participation 1.

16. Natixis Investment Managers ("NIM") is a French corporation, or *société anonyme* ("S.A."), with its principal place of business in Paris, France.

17. Natixis Investment Managers Participation 1 is a French limited liability company, or *société par actions simplifiée* ("SAS"), which is wholly owned by NIM.

### Citigroup

18. Defendant Citigroup is a New York corporation with its principal place of business located at 388 Greenwich Street, New York, NY 10013. Citigroup is a brokerage firm regulated by the Financial Industry Regulatory Authority ("FINRA") and is a member of the NYSE qualified to purchase and sell securities.

### JURISDICTION

19. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a) and 28 U.S.C. §1367 because the suit is brought against Citigroup, a citizen of New

4

York, by a named Plaintiff that is a citizen of a different state and the named Plaintiff's claims exceed $75,000.

20. Separately, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a state other than New York.

21. This Court has personal jurisdictional over Defendant because Citigroup is headquartered in New York and undertook the actions at issue in this matter in New York.

22. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Citigroup is located in this District.

## FACTUAL ALLEGATIONS

23. Citigroup is among the top brokers for Loomis' Growth Equity Strategies ("GES") portfolios in terms of shares traded, transaction amount and commissions.

24. Citigroup is a global investment bank that has significant experience trading on the NYSE. Citigroup is experienced in handling large trade orders.

25. Chiomastro is a current employee and registered financial professional at Citigroup and, on information and belief, has been an employee since 2011.

26. Chiomastro was the primary Citigroup trader for orders for Loomis' GES portfolios.

27. March 18, 2022 was a day with particular liquidity in the market. Certain large indices such as the S&P U.S indices were due to rebalance that day; multiple derivatives products, including index options and index futures, were expiring in the open auctions; and single stock options were expiring in the closing auction. The closing auction is the last event of

the trading day and "is a single-price auction that matches buy and sell orders at the price that maximizes the amount of tradeable stock."[1]  As a result, March 18, 2022, known as a triple or quadruple "witching" day, was expected to be a day with considerably more liquidity in the market than on typical trading days.

28. On March 18, 2022, LSTC and Loomis, acting as investment adviser and agent for a number of its clients, decided to adjust investment weights in the GES portfolios in order to rebalance those portfolios. This involved selling certain securities and purchasing others.

29. In connection with the weight adjustments for the GES portfolios, LSTC and Loomis placed two "waves" of trade orders for Citigroup to execute as broker and for the benefit of LSTC and the Loomis Clients. Citigroup accepted both waves of trade orders.

30. The first wave consisted of 33 sell orders representing 1,250,393 shares for a total value of approximately $130 million. These were supplemented by an additional sell order of 234,784 shares; collectively, these sell orders totaled 1,485,177 shares.

31. The first wave was accompanied by instructions that the trades were to be completed the same day.

32. In connection with this first wave, LSTC and Loomis instructed Defendant to "start early as needed" and "target MOC," which means that an appropriate volume should be transacted early, prior to close such that the remaining volume could be transacted at closing as market-on-close ("MOC") orders without materially affecting closing prices. These instructions directed Defendant to place as many trades as needed during the trading day such that the

---

[1] Why You Should Care About the NYSE Closing Auction, https://www.nyse.com/network/article/nyse-closing-auction?utm_source=navigation&utm_medium=nav&utm_campaign=tradenav; NYSE Trading Information, https://www.nyse.com/markets/nyse-american/trading-info.

remainder of the trades could be completed in the closing auction without materially affecting prices.

33. Defendant accepted the first wave of orders for execution on the terms submitted.

34. In the early afternoon on March 18, 2022, LSTC and Loomis placed the second wave of orders through to Citigroup. This second wave, which came in two tranches, consisted in total of 19,131,506 shares covering nine securities and consisting of three sells and six buys. The second wave included the Affected Orders (a sell order for 5,236,139 shares of CL and a buy order for 780,856 of SHOP).

35. The instructions for this second wave of orders included the directive that Defendant exercise its discretion to execute the trades in a manner that did not materially impact the prices of the securities being traded, including its discretion as to the order type, size, timing and price for the trades.

36. The instructions for this second wave of orders were to "wave out what you think is good for an aggressive MOC piece" and "trade the rest best way" and "can be most aggressive near the close." LSTC and Loomis also directed that the orders "[d]o not have to be complete on any of the second wave."

37. Trading the "rest best way" included Citigroup's discretion to use a variety of tools that Citigroup had available to it, including, for example, active intraday trading in the continuous electronic auction using algorithms, manual order entry, and/or floor brokers, and, with respect to the closing auction, limit-on-close ("LOC") orders, which were expressly discussed, and other tools such as floor broker discretionary orders ("D-Orders").

38. Citigroup, through Chiomastro, accepted the second wave of orders on these terms.

39. By these directions, which Citigroup, through Chiomastro, agreed to execute, LSTC and Loomis directed Citigroup to conduct an appropriate liquidity analysis to determine a reasonable quantity of shares to place as MOC orders aggressively without materially impacting the prices at which the trades were executed and place the remainder of the orders in the best way possible during the trading day, including near the close, or on a subsequent trading day.

40. In accepting these orders with the discretion to execute them in a manner consistent with the instructions, including the discretion to refrain from executing orders that could not be completed that day in compliance with Loomis' instructions, Defendant took on the duty of best execution.

41. Based on the instructions provided by LSTC and Loomis, it was or should have been clear to Citigroup that LSTC and Loomis were relying on Citigroup to protect their interests, including the interests of the Loomis Clients, and provide best execution of the trades.

42. The duty of best execution requires brokers to use diligent and reasonable efforts to maximize the economic benefit to its clients in each transaction, and to take steps sufficient to obtain the best possible results for its clients in executing trades.

43. The duty of best execution is a common law duty that predates federal securities laws, and has found its way into the rules of various self-regulatory organizations such as FINRA and the NYSE.

44. As the United States Securities and Exchange Commission ("SEC") has explained, "[a] broker-dealer's duty of best execution derives from common law agency principles and fiduciary obligations…. This duty of best execution requires a broker-dealer to

seek the most favorable terms reasonably available under the circumstances for a customer's transaction."[2]

45. FINRA's Rule 5310 incorporates the common law duty of best execution and provides that "[i]n any transaction for or with a customer or a customer of another broker-dealer, a member and persons associated with a member shall use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions." (The causes of action raised herein are not premised on FINRA Rule 5310; that rule is cited to give shape to the common law duty of best execution.)

46. The NYSE has similarly incorporated the duty of best execution in Rules 123A.41 and 123A.43 as follows: "Market orders.— A broker handling a market order is to use due diligence to execute the order at the best price or prices available to him under the published market procedures of the Exchange" (NYSE Rule 123A.41) and "At the close orders.—A broker handling an 'at the close' order is to use due diligence to execute the order in its entirety at the closing price, on the Exchange, of the stock named in the order, and if the order cannot be so executed, it is to be cancelled" (NYSE Rule 123A.43). (The causes of action raised herein are not premised on NYSE rules; the above-rules are cited to give shape to the common law duty of best execution.)

47. Citigroup failed to comply with its duty of best execution in connection with the Affected Orders.

---

[2] Exchange Act Release No. 37619A (September 6, 1996), 61 FR 48290, 48322 (September 12, 1996) (Order Execution Obligations Adopting Release).

48. Citigroup failed to conduct an appropriate analysis of the liquidity that the market could bear in the closing auction for SHOP and CL without materially affecting execution price even though the duty of best execution required Citigroup to do so.

49. Citigroup also failed to appropriately monitor the order imbalances for SHOP and CL, which were available to Citigroup, including through its floor brokers, and to react appropriately to the imbalance data even though the duty of best execution required Citigroup to do so under these circumstances.

50. Shortly before the cutoff time to enter MOC and LOC orders for the closing auction (3:50 pm EST), Citigroup entered large MOC orders for SHOP and CL, exacerbating already-existing imbalances for those securities.

51. Citigroup put the *entire* quantity of the Affected Orders into the market for participation in the closing auction as MOC orders.

52. Prior to placing the MOC orders for SHOP and CL, Citigroup was aware that the quantities for the Affected Orders "were bigger than [the] street" and would "dominate the trade."

53. Citigroup's actions of placing *all* of the shares of the Affected Orders into the closing auction as MOC orders caused those shares to flood and dominate the auction, which in turn materially impacted the execution price and caused damages to Plaintiff and the Class.

54. As a result, Citigroup purchased for Plaintiff's Collective Trust and the Class a total of 780,856 shares of SHOP at a price that spiked in the closing auction by some $90 per share, causing in excess of $60 million in needless losses to Plaintiff and the Class.

55. Similarly, Citigroup placed the entirety of an order to sell 5,236,139 shares of CL into the closing auction, which caused the price to drop causing in excess of $10 million in needless losses to Plaintiff and the Class.

56. Consistent with the duty of best execution, Defendant should not have placed the entirety of the Affected Orders as MOC orders in the closing auction when any reasonable analysis of liquidity and imbalance data would have revealed that the auction could not bear the full quantity of the orders without materially affecting the stock price.

57. Defendant should have properly determined the portion of the Affected Orders that the closing auction could bear without materially affecting stock price and then "trade[d] the rest best way" while heeding the directive that the entirety of the Affected Orders "[did] not have to be complete" on the same trading day.

58. Additionally, Citigroup could have and should have cancelled the appropriate portion of the SHOP and CL MOC orders that overwhelmed the auction prior to the 3:50 pm cutoff.

59. Pursuant to the then-existing NYSE rules and policies governing the entry and cancellation of MOC orders, MOC orders could be cancelled or reduced in size after 3:50 pm to correct a "legitimate error."[3] On information and belief, Citigroup's errors in analyzing the appropriate number of shares to enter into the closing auction, which caused extreme order imbalances for both SHOP and CL, warranted canceling or reducing the size of the Affected Orders on the basis of legitimate error. After 3:58 pm, Citigroup could have sought to cancel the orders in light of its legitimate errors because execution of the orders would, and in fact did,

---

[3] *See, e.g.*, NYSE Regulatory Memo dated March 14, 2022 regarding "Quarterly Expiration Day – March 18, 2022" (available at https://www.nyse.com/publicdocs/nyse/markets/nyse/rule-interpretations/2022/Quarterly%20Expiration%20IM%20Q1%20-%2022%20-%20Final%20-%20Corrected.pdf).

11

cause significant price dislocation at the close. On information and belief, Citigroup made no attempt to cancel or reduce the size of the Affected Orders at any time.

60. Further, Defendant could have, and as a matter of its duty should have, availed itself of other available measures that could have avoided the losses, including utilizing its on-floor trading staff and/or contacting the NYSE on-floor ramp and other staff, and/or involved the Designated Market Maker to suspend the auction for dislocation, call for more liquidity, and/or cancel orders in the auction. For example, the then-existing NYSE rules expressly allowed the Designated Market Maker to permit the solicitation and entry of orders after 4:00 pm to offset an extreme order imbalance. On information and belief, Citigroup made no request that the Designated Market Maker invoke such rule for either SHOP or CL, despite the fact that extreme order imbalances existed for both securities.

61. Plaintiff and the Class paid commissions to Citigroup on account of the March 18, 2022 trades.

62. Citigroup filed a complaint with the NYSE related to the trades it executed for LSTC and Loomis on March 18, but refused to provide Loomis with details of the complaint.

63. Loomis sent a written request to Citigroup for information regarding Citigroup's analysis on March 18, 2022 and a follow up request on May 25, 2022, but Citigroup failed to provide any meaningful information and provided no substantive response whatsoever to the May 25 follow up request.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class consisting of LSTC and Loomis Clients that participated in the trades of SHOP and/or CL executed by Citigroup on March 18, 2022 and were

damaged as a result of Defendant's failure to execute the trades consistent with LSTC and Loomis' instructions and Defendant's duty of best execution.

65. The members of the Class are so numerous that joinder of all members is impracticable. There are in excess of two hundred class members.

66. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's breach of its duty of best execution that is complained of herein.

67. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and complex civil litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are whether Defendant breached its duty of best execution and caused the damages complained of herein.

69. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. There will be no difficulty in the management of this action as a class action.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

70. Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 69 as if set forth fully herein.

71. Plaintiff and the Class, directly or through their agent Loomis, offered to have Citigroup use its professional discretion to execute the Affected Order for them on March 18, 2022 in accordance with the accompanying instructions and Citigroup's duty of best execution

and related standards, and in exchange for commissions to be paid to Citigroup in connection with the trades.

72. Citigroup accepted the offer, forming a binding contract.

73. Plaintiff and the Class performed in full.

74. Citigroup failed to execute in accordance with the accompanying instructions and its duty of best execution, and, as a result, materially breached the agreement.

75. Plaintiff and the Class suffered in excess of $70 million of losses as a result of Citigroup's breaches for which Citigroup is liable.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

76. Plaintiff re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs 1 to 75 as if set forth fully herein.

77. As a broker who agreed to take on the discretion to decide how to execute the Affected Orders within the parameters delivered therewith, including discretion to determine the order type, size, timing, and price for the trades, Defendant owed Plaintiff and the Class a fiduciary duty.

78. Defendant failed to discharge its fiduciary duty, including its duty of care, by failing to reasonably evaluate liquidity, by putting the entirety of the Affected Orders into the closing auction despite the fact that there was inadequate liquidity, by failing to pull back the orders and/or seek a halt to the closing auction when the imbalances were or should have been apparent to Citigroup and by failing to achieve best execution.

79. Plaintiff and the Class were injured by Defendant's breaches of fiduciary duty and, as a result, caused Plaintiff and the Class in excess of $70 million of losses for which Defendant is liable.

## PLAINTIFF DEMANDS A JURY TRIAL

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Certify the Class and enter judgment for Plaintiff and the Class and against Defendant on each and every count in an amount sufficient to compensate Plaintiff and the Class for the harm they have suffered.

b. Award Plaintiff its costs and attorney's fees incurred in prosecuting this action; and

c. For such other relief as may be just and proper.

Dated: August 6, 2022
New York, NY

Respectfully submitted,

/s/ Leah S. Rizkallah
Stephen P. Younger
Leah S. Rizkallah
Amanda Coleman
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, NY 10019

Dean Richlin (*pro hac vice motion forthcoming*)
Matthew C. Baltay (*pro hac vice motion forthcoming*)
Natalie F. Panariello (*pro hac vice motion forthcoming*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210

*Counsel for Plaintiff Loomis Sayles Trust Company, LLC*