**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOOMIS SAYLES TRUST COMPANY, LLC, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>CITIGROUP GLOBAL MARKETS INC.,<br><br>      Defendant. | Civil Case No. 22-cv-6706-LGS |

<u>**REPLY MEMORANDUM OF DEFENDANT CITIGROUP GLOBAL MARKETS INC.**</u>
<u>**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF LOOMIS**</u>
<u>**SAYLES TRUST COMPANY, LLC'S CLASS ACTION COMPLAINT**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................2

I.     INTERPRETATION OF THE MARCH 18 COMMUNICATIONS THAT ARE THE FOUNDATION OF THE PARTIES' ALLEGED CONTRACTUAL AND FIDUCIARY RELATIONSHIP IS A QUESTION OF LAW THAT THE COURT CAN DECIDE ON A MOTION TO DISMISS. ..................................................2

II.    THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CGMI BREACHED ANY CONTRACTUAL OR FIDUCIARY DUTY. ....................................4

III.   LSTC'S CLAIMS ARE PRECLUDED BY SLUSA. .......................................9

CONCLUSION ................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)...................................................................................2

*Capstone Asset Mgmt. Co. v. Dearborn Capital Grp.*,
    21cv997, 2021 WL 4250087 (S.D.N.Y. Sept. 17, 2021)...................................................4

*Citadel Equity Fund Ltd. v. Aquila, Inc.*,
    371 F. Supp. 2d 510 (S.D.N.Y. 2005)..................................................................2, 3

*Corr. Officers' Benevolent Ass'n Inc. v. City of N.Y.*,
    415 F. Supp. 3d 464 (S.D.N.Y. 2019)....................................................................8

*Gwin v. Nationwide Life Ins. Co.*,
    No. 2:08-CV-0059-RDP, 2008 WL 8945610 (N.D. Ala. Apr. 15, 2008)...............................10

*Kraft v. Third Coast Mistream*,
    No. 19 Civ. 9398 (LJL), 2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) ...................................2

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)................................................................................5

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)................................................................................3

*Miller v. Metro. Life Ins. Co.*,
    17 Civ. 7284 (AT), 2019 WL 4450637 (S.D.N.Y. Sept. 17, 2019).....................................10

*Ramchandani v. CitiGroup, Inc.*,
    No. 19 Civ. 9124 (VM), 2019 WL 4862251 (S.D.N.Y. Oct. 2, 2019) ..................................3

*Rupnow v. E\*TRADE Sec., LLC*,
    19-CV-10942 (VSB), 2021 WL 5854442 (S.D.N.Y. Dec. 9, 2021).....................................10

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
    959 F.2d 425 (2d Cir. 1992)................................................................................2

*In re Stillwater Cap. Partners Inc. Litig.*,
    851 F. Supp. 2d 556 (S.D.N.Y. 2012)...................................................................10

*United States v. Szur*,
    289 F.3d 200 (2d Cir. 2002)................................................................................7

*United States v. Wolfson*,
    642 F.3d 293 (2d Cir. 2011)......................................................................................7

*Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004).......................................................................9

*Zurich Am. Life Ins. Co. v. Nagel*,
    538 F. Supp. 3d 396 (S.D.N.Y. 2021).....................................................................10

## PRELIMINARY STATEMENT

This case must be dismissed if the Court determines that Loomis instructed CGMI to place market-on-close ("MOC") orders for CL and SHOP.  The March 18 Communications that CGMI placed before the Court comprise Loomis's trading instructions and are the sole foundation of any relationship between the parties.  Those communications, when viewed in full, compel the conclusion that Loomis instructed CGMI to place MOC orders just before the deadline for the NYSE closing auction.  That is fatal.

LSTC obscured this interpretation by presenting a grossly incomplete and misleading picture of the parties' communications in the Complaint—including only snippets from Loomis's initial outreach, while omitting the extensive back and forth that followed.  In its Opposition, LSTC struggles to explain the Complaint's material omissions, attempting to recast the missing communications as somehow consistent with its theory that Loomis granted CGMI unfettered discretion to trade.  In fact, LSTC's hindsight interpretation of its own instructions is unreasonable, and the Court should reject it as such and dismiss the case.

The Complaint should also be dismissed under SLUSA.  The Complaint plainly alleges that CGMI made various misrepresentations and omissions regarding the analyses it would perform to assist Loomis in deciding upon its trading strategy and the instructions it would provide to CGMI.  Those allegations sound in fraud—regardless of how insufficient they might be to state a claim for fraud or how unnecessary LSTC argues they are to the contract and fiduciary duty claims it has asserted.  SLUSA preclusion is appropriate.

## ARGUMENT

**I.  INTERPRETATION OF THE MARCH 18 COMMUNICATIONS THAT ARE THE FOUNDATION OF THE PARTIES' ALLEGED CONTRACTUAL AND FIDUCIARY RELATIONSHIP IS A QUESTION OF LAW THAT THE COURT CAN DECIDE ON A MOTION TO DISMISS.**

"Issues of contract interpretation are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss." *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 516 (S.D.N.Y. 2005) (citation omitted).  On a motion to dismiss, the court's independent analysis regarding the meaning of the contract "govern[s] *over* Plaintiffs' inaccurate description".  *Kraft v. Third Coast Mistream*, No. 19 Civ. 9398 (LJL), 2021 WL 860987, at *2 n.2 (S.D.N.Y. Mar. 8, 2021) (emphasis added).  In the words of the Second Circuit:  "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations."  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

LSTC does not dispute that the March 18 Communications comprise the agreement and established the relationship that LSTC alleges CGMI breached—nor could it, considering that neither the Complaint nor the Opposition points to anything else that allegedly gave rise to any such relationship.  LSTC also does not dispute the accuracy, completeness or authenticity of the chats and phone transcripts that CGMI submitted to the Court, nor does it disagree that the Court may consider those materials at this stage.[1]  LSTC's argument that there is a dispute regarding "whether and how" the March 18 Communications relate to the parties' relationship (Opp'n at 9) is nonsensical—those communications are the sum and substance of "whether and how" a

---

[1] In a footnote, LSTC hedges by asserting that it can "cite to the exhibits attached by Citigroup (without conceding that the exhibits are true, correct, or complete transcripts of the chat and telephone calls)" (Opp'n at 3 n.1), while saying nothing whatsoever to contest the completeness or accuracy of those materials (*see id.* at 9). Regardless, LSTC's wavering does not change the basic principle that "[i]nsofar as the complaint relies on the terms of [an agreement], [the Court] need not accept its description of those terms, but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

relationship even exists.  The Complaint emphasizes as much in alleging that CGMI "accepted the offer" and "agreed to" "execute the Affected Order" consistent with the "accompanying instructions" found in the March 18 Communications.  (Compl. ¶¶ 29, 71-72, 77.)

LSTC also seems to argue that the March 18 Communications present a dispute of fact that the Court should avoid, rather than a contract that the Court should interpret on a motion to dismiss, because they are informal in nature and include "trader jargon".  (Opp'n at 9.)  But whether an agreement is embodied in a formalized, written and signed document or, as here, in Bloomberg chats and phone calls, does not alter the basic rule that discerning meaning is a legal question for the Court to determine at this stage.  *See Aquila*, 371 F. Supp. 2d at 516.  Nor does the minimal presence of "trader jargon" prevent the Court from interpreting the agreement on a motion to dismiss.  In fact, each of the cases LSTC cites on that point observed that parsing jargon at the pleadings stage was unnecessary.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 175 (2d Cir. 2015) (noting the court need not "definitive[ly]" construe jargon, but simply apply the Rule 9(b) pleading requirements).[2]  Indeed, LSTC identifies no "jargon" that in any way prevents the Court from being able to interpret the intent of the parties.  Quite the contrary, as discussed in more detail below (*infra* § II), LSTC's "factual" quibbles regarding the March 18 Communications focus on far more mundane details, such as the presence of a question mark and the usage of the word "fine".  The Court does not need specialized industry expertise or fact discovery to decipher punctuation or simple language.

---

[2] LSTC's citation to the *complaint*—rather than an actual court decision—from *Ramchandani v. CitiGroup, Inc.*, No. 19 Civ. 9124 (VM), 2019 WL 4862251 (S.D.N.Y. Oct. 2, 2019) (*see* Opp'n at 9 n.4) is telling.  The allegations contained in a complaint of an entirely different proceeding are irrelevant to understanding *this* Court's role in deciding *this* motion.

II.   **THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE THAT CGMI BREACHED ANY CONTRACTUAL OR FIDUCIARY DUTY.**

A.   **The March 18 Communications make clear that Loomis instructed CGMI to place the MOC orders for CL and SHOP.**

It is beyond dispute that LSTC's Complaint presented an incomplete and selective view of the March 18 Communications that focused entirely on limited excerpts of the parties' chats at 2:30-2:31 p.m. and was silent regarding the extensive back and forth that occurred until the NYSE auction deadline at 3:50 p.m.  CGMI put the entirety of the March 18 Communications before the Court and believes that, viewed in full and holistically, they unambiguously show that Loomis's instructions to CGMI were the product of a logical process, wherein:  Loomis first identified the stocks and quantities it wanted to trade and its general objectives; CGMI provided market color regarding liquidity and imbalances that Loomis took into consideration along with its own analysis; CGMI and Loomis discussed various options at various times for how the trades might be completed; and ultimately Loomis decided to instruct CGMI, as agent, to enter MOC orders for all of the stocks with the exception of SAM.  (Br. at 5-8, 12-15.)  The Court can and should reach the same conclusion.  Considering that LSTC drafted the Complaint so as to withhold from the Court a complete picture of the parties' communications, LSTC's accusation that "[CGMI] relies on . . . a selective and misleading recitation of the communications" (Opp'n at 9), rings hollow.

Having omitted from the Complaint all but a few self-serving and out-of-context snippets, LSTC now scrambles for various post hoc explanations for why the omitted communications actually support its view that Loomis's instructions were set in stone at 2:31 p.m., and all the rest had nothing to do with the parties' agreement.  (*See* Opp'n at 3-7, 10-12.)  But LSTC's arguments are inconsistent with the plain language and full context of the March 18 Communications and do not give rise to any ambiguity.  *See Capstone Asset Mgmt. Co. v.*

4

*Dearborn Capital Grp.*, 21cv997 (DLC), 2021 WL 4250087, at *5 (S.D.N.Y. Sept. 17, 2021) ("To determine whether disputed contract language is ambiguous, a court must ask whether it is 'ambiguous when read in the context of the entire agreement.'" (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)).  Accordingly, the Court should reject LSTC's interpretation and dismiss the case.

*First*, LSTC points to an exchange at the end of the 2:32 p.m. call to argue that "the decision to 'work [the orders] early' was in Chiomastro's discretion".  (Opp'n at 10 (alteration in original) (citing Dkt. 37-2 at 3:21-4:7).)  That ignores Loomis's Director of Trading Nicholas Gagnon's subsequent communication at 3:48 p.m. instructing that Loomis was "looking to *complete all* except maybe SAM".  (Dkt. 37-1 at 3:48:50 (emphasis added).)  When placed in context with the 3:48 p.m. chat, LSTC's interpretation of the 2:32 p.m. call makes no sense.  The 3:48 p.m. chat reflects the iterative nature of Loomis's instructions to CGMI, which culminated in Mr. Gagnon's final and express directive, just before the auction cutoff, to place MOC orders for all stocks other than SAM.

*Second*, with respect to the 3:48 p.m. chat, LSTC also contends Mr. Gagnon's use of a question mark shows he "was asking Chiomastro what he intended to do, not instructing him", as if Mr. Gagnon were powerless to tell Mr. Chiomastro what he wanted as they both discussed potential trading strategies.  (Opp'n at 11.)  Not so.  The only plausible reading is that after extensive back and forth strategizing about the desired trades, Loomis, the client, through its Director of Trading, was confirming its instruction to CGMI, its broker, to place all the orders MOC except SAM.

*Third*, regarding the same chat, LSTC also argues that "complete all" could have meant that some portion of the order would not be MOC.  (*See* Opp'n at 11 n.5.)  That makes no sense,

given that the message was sent approximately one minute before the closing auction cutoff time.  Accordingly, it could not conceivably have been an instruction to trade prior to the closing auction.  Nor could it reflect that CGMI had discretion to place limits on the orders, because that would have risked *not* "complet[ing] all".  Simply put, the only plausible reading is that right before the auction cutoff Loomis was confirming its final instruction that CGMI should place all orders MOC, except SAM.

*Fourth*, LSTC's interpretation of the 3:31 p.m. call is also illogical.  It is evident from the outset of the discussion that the purpose of that call was for Mr. Gagnon to discuss with Mr. Chiomastro potential limits CGMI would be authorized to use on certain orders.  (*See* Dkt. 37-3 at 1:3-5.)  LSTC's alternate explanation, that Mr. Gagnon's question, "CL what percent do you think you'll be done, um, excluding whatever we have to do, limit on close?" indicates that a portion of the CL order was instructed to be placed LOC (Opp'n at 11), entirely ignores Mr. Gagnon's statement seconds later that he *did not think they would need to use a limit with CL*: "I do see some buyers showing up in CL . . . So I'm thinking it's gonna be fine".  (Dkt. 37-3 at 2:12-15.)  And the suggestion that it is unclear what the word "fine" modifies (Opp'n at 6 n.3), is frivolous.  The complete exchange makes clear that Mr. Gagnon means he thought it would be "fine" not to use a limit—*i.e.*, to place CL as MOC.  That is, of course, also consistent with Mr. Gagnon's subsequent chat confirming that an LOC order was necessary only for SAM.  (*See* Dkt. 37-3 at 2:12-15, 2:21-3:5; *see also* Dkt. 37-1 at 3:48:50.)

*Finally*, LSTC argues that Mr. Gagnon's statement on the 3:31 p.m. call, "That sounds perfect" was in response only to Mr. Chiomastro's saying that he might call Mr. Gagnon again in ten minutes.  Again, read in its full context, Mr. Gagnon is plainly responding to Mr. Chiomastro's summary of expected liquidity ("the liquidity should be there") and likelihood that

the entirety of the remaining CL order would be MOC ("I do think that CL we just end up being down there all MOC"), indicating that Mr. Gagnon was ultimately in charge.  (Dkt. 37-3 at 2:21, 3:3.)

**B.      CGMI's only duty was to execute the trades as instructed, which it did.**

Because CGMI lacked discretion over the Affected Orders, it owed no duty to LSTC beyond executing as instructed.  LSTC argues for a separate, more expansive duty of "best execution", relying primarily on *United States v. Wolfson*, 642 F.3d 293, 295 (2d Cir. 2011), for the proposition that "particular factual circumstances may serve to create a fiduciary duty between a broker and his customer *even in the absence of a discretionary account*."  (Opp'n at 13 (emphasis in original).)  LSTC fails to articulate—either in the Complaint or the Opposition—what "particular factual circumstances" are present in this case sufficient to give rise to more expansive fiduciary duties.  *Wolfson*—a criminal appeal based on disclosure duties and the adequacy of jury instructions—does not dictate that such a rule should apply in this case, as the Second Circuit there affirmed the longstanding rule that "there is no general fiduciary duty inherent in an ordinary broker/customer relationship", and upheld jury instructions that described "reliance and de facto control and dominance" as the "heart" of the fiduciary relationship.  642 F.3d at 295 (quoting *United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002)).  Nowhere does the Complaint allege that CGMI exercised anything remotely resembling "de facto control and dominance" over Loomis, its multi-billion dollar investment manager client.

Further, to the extent the Opposition points to conclusory allegations in the Complaint to establish that CGMI owed LSTC a duty of best execution beyond following instructions, that should be rejected.  (*See* Opp'n at 13 ("Loomis entrusted Citigroup with the discretion to execute the orders in a manner that would not materially impact the price.  Compl. ¶¶ 1, 35-37. Citigroup thus owed a fiduciary duty, including the duty of best execution, in connection with

the Affected Orders.  *Id.* ¶¶ 77-78.")  The existence of a fiduciary relationship and its scope is a

legal question, and the Complaint's bald assertion that there was such a duty is entitled to no

deference on a motion to dismiss.  *See Corr. Officers' Benevolent Ass'n  Inc. v. City of N.Y.*, 415

F. Supp. 3d 464, 468 (S.D.N.Y. 2019) (noting that "legal conclusions couched as factual

allegations [do not] merit . . . deference" on a motion to dismiss (cleaned up)).  And the

Complaint's actual allegations of fact support nothing beyond the basic existence of a

client-broker relationship, not some heightened duty.

### C.    LSTC's other arguments are contradicted by the March 18 Communications and applicable NYSE Rules.

With respect to liquidity and imbalance data, LSTC argues that "Citigroup was required

to appropriately and reasonably analyze liquidity . . . [and] failed to adequately monitor and react

to imbalance data".  (Opp'n at 15.)  Just like the Complaint's allegation that CGMI's analyses

were not "reasonable" (Compl. ¶ 56), LSTC points to no facts and fails to explain what it

contends CGMI should have done but failed to do.  (*See* Br. at 14-15.)  Nor does LSTC cite a

single case in which similarly conclusory allegations survived a motion to dismiss.

With respect to the assertion that CGMI should have canceled the orders for "error" after

the 3:50 p.m. cutoff, LSTC simply parrots the conclusory Complaint allegations (Opp'n at 16

(citing Compl. ¶¶ 59-60)) and ignores the straightforward language of the applicable NYSE

Rules, which allow for cancellation of an order only in narrow circumstances not alleged and not

present here.  (Dkt. 37-4 at 2 n.3.)  Neither the Complaint nor the Opposition offers any basis for

the Court to conclude that the sort of error in judgment alleged by LSTC implicates an NYSE

Rule that on its face plainly applies to errors resulting from inaccurate or "fat-fingered" data

entry, such as mistakenly adding an extra zero to the number of shares.  (*See id.*)  The Court is

capable of reading the NYSE Rule and, without specialized industry expertise, deciding whether it applies to the facts alleged here.  It does not.

Finally, LSTC provides no substantive response to the argument that under the NYSE Rules only a DMM may request a temporary suspension.  (Br. at 16.)  LSTC merely repeats the Complaint's conclusory assertion that CGMI should have acted "as a matter of its duty" (Opp'n at 16 (quoting Compl. ¶ 60)), without explaining how or why such a duty supposedly existed.

## III.    LSTC'S CLAIMS ARE PRECLUDED BY SLUSA.

LSTC attempts to avoid SLUSA preclusion by running from what are unmistakably allegations (albeit weak ones) of fraudulent misrepresentations and omissions.  The Complaint plainly contends that CGMI misrepresented the nature of the liquidity and imbalance analyses it would perform for CL and SHOP.  (*See* Compl. ¶¶ 48, 56.)  In view of the March 18 Communications, those allegations can mean only that, throughout the trading day, CGMI supposedly misrepresented the services it would provide and withheld critical information from Loomis, and that if CGMI had actually performed the types of analyses it agreed to, Loomis would not have instructed CGMI to place the relevant orders as MOC.  Those allegations sound in fraud.

Moreover, the Complaint explicitly alleges that "*Citigroup was aware* that the quantities for the Affected Orders 'were bigger than [the] street' and would 'dominate the trade'" (Compl. ¶ 52 (emphasis added)), which is precisely the sort of alleged intentional omission that underlies fraud claims that SLUSA precludes.  Recognizing the problem, LSTC argues that the allegation "could be entirely removed" without impacting its contract and fiduciary duty claims.  (Opp'n at 23.)  But whether particular allegations of fraudulent misrepresentations and omissions are necessary to maintain the claims is beside the point; what matters is that those allegations sound in fraud "in words or substance", *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA)*

*Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004), and LSTC's "artful[] plead[ing]" does not prevent the application of SLUSA here. *Miller v. Metro. Life Ins. Co.*, 17 Civ. 7284 (AT), 2019 WL 4450637, at *3-4 (S.D.N.Y. Sept. 17, 2019). CGMI certainly agrees with LSTC that the allegations of intent are conclusory, weak and would never actually sustain a securities fraud claim (*see* Opp'n at 21), but preclusion under SLUSA is still appropriate. *See Gwin v. Nationwide Life Ins. Co.*, No. 2:08-CV-0059-RDP, 2008 WL 8945610, at *5 n.5 (N.D. Ala. Apr. 15, 2008) (citation omitted).

LSTC's cases (*see* Opp'n at 18-19) do not compel a different outcome. *Rupnow* and *Stillwater* are inapposite because they did not turn on the defendants' failure to disclose material information. *Rupnow v. E*TRADE Sec., LLC*, 19-CV-10942 (VSB), 2021 WL 5854442, at *5-6 (S.D.N.Y. Dec. 9, 2021); *In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 572-73 (S.D.N.Y. 2012). LSTC's reliance on *Xpedior* depends on its erroneous narrative that Loomis's trading instructions were finalized at 2:31 p.m. (which they were not, *see supra* § II.B). The Complaint does not merely allege that CGMI "promised to do one thing but then did another", *Xpedior*, 341 F. Supp. 2d at 265, but rather that CGMI misrepresented what analyses it was performing, leading Loomis to instruct CGMI to place MOC orders for the CL and SHOP trades.

## **CONCLUSION**

LSTC's Complaint should be dismissed in its entirety, with prejudice, or, in the alternative, LSTC's fiduciary duty claim should be dismissed with prejudice.[3]

---

[3] LSTC's fiduciary duty claim should be dismissed as duplicative of the contract claim. (Br. at 24-25.) The cases cited in the Opposition are readily distinguishable. *See, e.g., Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 403 (S.D.N.Y. 2021) (describing ways the defendant could breach the contract but not the fiduciary duty and vice versa). Here, a breach of one is necessarily a breach of the other; as both claims are based on CGMI's alleged failure to execute the orders pursuant to Loomis's instructions.

Dated:  December 16, 2022

Respectfully submitted,

/s/ Michael A. Paskin

**CRAVATH, SWAINE & MOORE LLP**
Michael A. Paskin
Helam Gebremariam
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
mpaskin@cravath.com
hgebremariam@cravath.com

*Attorneys for Defendant Citigroup Global
Markets Inc.*

11