**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

LOOMIS SAYLES TRUST COMPANY, LLC, ) 
individually and on behalf of all others similarly )
situated, )
                      )
        Plaintiff, )
                      )   Civil Case No. 22-cv-6706-LGS
        v. )
                      )
CITIGROUP GLOBAL MARKETS INC. )
                      )
        Defendant. )

———————————————————————

## STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS

Plaintiff Loomis Sayles Trust Company, LLC and Defendant Citigroup Global Markets Inc. (collectively, the "Parties", and individually, a "Party") submit this Stipulation and [PROPOSED] Order Re: Discovery of Electronically Stored Information ("ESI Protocol" or "Protocol") to govern discovery of electronically stored information in this action as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

To the extent this Protocol does not address certain issues, those issues remain open for resolution in a separate protocol, either negotiated by the parties or ordered by the Court.

1.    **Definitions**

1.1.   **"Confidentiality Designation"** means the confidentiality designation affixed to Documents as defined by, and subject to, the Protective Order, or any applicable agreement or stipulation, entered in this matter.

1.2.    **"Custodian"** means the individual from whose files the Document originated, or in the case of a Document that originated from a document source not associated with the files of one particular individual, the source of that Document (e.g., shared folder name).

1.3.    **"Document" or "Documents"** means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

1.4.    **"Document Family"** means a Document and all other Documents that are attached to it, the Document to which other Documents are attached being the "Parent", and Documents that are attached to the Parent being the "Children".

1.5.    **"E-Document"** means a word processing, spreadsheet, presentation or other file (other than Email or E-Messages) stored or transmitted in electronic form.

1.6.    **"Electronically Stored Information"** or **"ESI,"** means any Document or Documents stored or transmitted in electronic form.

1.7.    **"Email"** means electronic messages sent using electronic mail protocols (e.g., SMTP).

1.8.    **"E-Message"** means a non-Email form of electronic messaging, including text and group messaging (e.g., Slack, Cisco Jabber, Microsoft Teams, Instant Bloomberg, Google Chat, SMS, MMS, iMessage, Microsoft Lync, WhatsApp, WeChat).

1.9.    **"Hard-Copy Document"** means any Document existing in paper form at the time of collection.

1.10.    **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

1.11.    **"Image Format"** means an image version of a Document that displays the content of that Document.  Documents produced as TIFFs are produced in Image Format.

1.12.    **"Include"** and **"Including"** shall be construed to mean "include but not be limited to" and "including, but not limited to".

1.13.    **"Load Files"** means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

1.14.    **"Metadata"** means information about a Document aside from the contents of the Document itself.

1.15.    **"Mobile Device"** means any mobile phone, cellular phone, or tablet device (e.g., iPhone, iPad, Android-compatible devices, or Microsoft Surface Go).

1.16.    **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.  For example, the Native Format of an Excel workbook is a .xls or .xlsx file.

1.17.    **"Optical Character Recognition"** or **"OCR"** means the process of recognizing and creating a file containing visible text from a Document.

1.18.   **"Producing Party"** means and refers to the Party upon whom a request for the production of Documents is served.

1.19.   **"Requesting Party"** means and refers to the Party that serves a request for the production of Documents.

1.20.   **"Searchable Text"** means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

2.      **General Provisions**

2.1.    The parties agree the manner of production of ESI is to be governed by Fed. R. Civ. P. 26(b)(2)(B) and 34(b)(2)(E).  The parties further agree to use good faith efforts to produce all responsive identified ESI as promptly as practicable in accordance with the agreed-upon specifications set forth below.

2.2.    In accordance with Rule III.C.3 of Judge Schofield's Individual Rules and Procedures, the Parties will attempt in good faith to resolve any disputes through the meet and confer process before filing any letter motion for a pre-motion discovery conference. The Parties commit to cooperate in good faith throughout the pendency of the e-discovery process.

2.3.    The parties will make reasonable efforts to ensure any productions made are free from viruses and are provided on encrypted media.

2.4.    ESI will be produced under the specifications outlined in Paragraph 5 and Exhibit A.  Documents falling outside the scope of Paragraph 5 and Exhibit A will be discussed before production to determine an acceptable production format.

2.5.    Documents will be produced either via secure file transfer protocol ("SFTP"), external hard drives, readily accessible computer(s), or other electronic media.

2.6.     Any practice or procedure set forth herein may be varied by agreement of
the Parties, which will be confirmed in writing.  The Parties will meet and confer to
resolve any dispute regarding the application of this Order before seeking Court
intervention.

2.7.     Activities undertaken in compliance with the duty to preserve information
are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), except for good
cause shown.

3.     **Searching**

3.1.     Pursuant to Rule II.A.1 of Judge Lorna G. Schofield's Individual Rules
and Procedures for Civil Cases, the parties agree that, absent an order of the Court upon a
showing of good cause or stipulation by the parties, a Party from whom ESI has been
requested shall not be required to search for responsive ESI:

(a)     From more than 10 custodians;

(b)     That was created more than five years before the filing of the
lawsuit;

(c)     From locations not otherwise identified in Paragraph 3.3, *infra* that
are not reasonably accessible without undue burden or costs;

3.2.     A Party who intends to use search terms will specify in a Search Protocol:
(1) the universe of ESI to which search terms will be applied (*e.g.*, custodians, data
sources, date range), and (2) the search terms to be applied to that universe of ESI.  The
Parties shall timely meet and confer regarding any disputes regarding such protocol.

3.3.     Locations Not to Be Searched for Responsive Documents.  The parties
agree that these data sources are not reasonably accessible because of undue burden or
cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will be preserved

only to the extent it is ordinarily preserved in the normal course of business. These sources need not be collected, searched or reviewed nor do Documents need to be produced from such sources except for good cause shown:

<blockquote>

(a)    backup systems and/or tapes used for disaster recovery purposes only or that are substantively duplicative of data that is more accessible elsewhere;

(b)    systems, server, and network logs; that were not in use as of March 18, 2022 and that cannot be accessed without undue effort;

(c)    automatically saved interim versions of Documents and Emails;

(d)    deleted, slack, fragmented, or other data accessible only by forensics;

(e)    random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(f)    on-line access data such as temporary internet files, history, cache, cookies, and the like;

(g)    dynamic fields of databases or log files that are not retained in the usual course of business;

(h)    Metadata that is frequently updated in the ordinary course of business, such as last opened dates;

</blockquote>

3.4.    Responsive documents that are identified or reasonably can be identified without the use of an electronic search should be produced regardless of whether they are identified in any search protocol.  In addition, nothing in this paragraph shall limit a

Receiving Party's right to request from a Producing Party more information about the nature of and burden associated with obtaining documents from a particular location.

3.5.    That a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.  The Producing Party must make a good-faith determination as to responsiveness and privilege for each document hit.

3.6.    The Parties do not intend to use technology assisted review ("TAR") to eliminate documents from attorney review but, should that change, reserve the right to amend the Protocol accordingly.

4.    **Processing Specifications**

4.1.    <u>De-Duplication.</u>  Parties are required to produce only a single copy of a responsive document and may de-duplicate responsive ESI across custodians.  The Producing Party shall take reasonable steps to remove Documents identified as duplicative based on MD5 or SHA-1 Hash Values of the full text of the Documents, including Email header information, notes, and annotations.  For emails with attachments, the Hash Value will be generated based on the Parent/Child document group.  Documents within a Document Family shall be considered duplicative of other Documents only if all Documents within each Document's Document Family are duplicative.  An Email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the Email is identical.  Exact duplicates of Documents retrieved from different Custodians may be considered duplicative despite

originating from a different Custodian.  The Parties shall timely meet and confer regarding any disputes regarding the de-duplication process.

4.2.    The Producing Party shall provide a Metadata field "ALLCUSTODIANS" for all Documents, listing the Custodian of the Document and all Custodians that possessed or held any duplicate of the Document that was removed through de-duplication.  Such de-duplicated documents shall be deemed produced from the files of each such identified Custodian for all purposes in this litigation, including for use at deposition and trial.  A Producing Party shall use a uniform description of a particular Custodian across productions.  The Producing Party will timely update the "ALLCUSTODIANS" field through an overlay file as necessary to comply with this provision, including where a later processed Document de-duplicates against a previously produced Document.  The overlay file shall include all Custodians listed in the "ALLCUSTODIANS" field in prior productions and any Custodians newly identified in the current supplemental production.

4.3.    Email Threading.  The Parties are permitted to use commercially reasonable Email threading tools to remove Emails and their attachments where the contents of the Email and its attachments are wholly included within another Email and its attachments that are not removed.  Upon request a Party will disclose the tool used for Email threading and reasonable information regarding its functioning.

4.4.    System Files/Application Executable Files.  Each party will use reasonable efforts to filter out common system files and application executable files.  Non-user generated files may be removed from review and production using the list of non-user generated files maintained by the National Institute of Standards and Technology (NIST).

Additional culling of system files based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), and Program Installers. Parties need not produce non-human readable E-Documents, except upon a showing of good cause by the Requesting Party.

      4.5.   <u>Embedded Objects.</u> A Producing Party shall produce non-image objects that are embedded in other documents ("Embedded Objects") as separate documents, which shall be treated as attachments to the Document from which it was extracted.

      4.6.   <u>Hyperlinked Files</u>. A Producing Party is not required to produce hyperlinked files as part of the same Document Family as the Document containing the hyperlink, provided however, that upon reasonable and particularized request, a Producing Party will produce or identify such files to the extent it can locate them.

      4.7.   <u>Compressed Files.</u> Compression file types (*e.g.*, .CAB, .GZ, .RAR, .TAR, .Z., .ZIP, etc.) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

      4.8.   <u>Metadata Extraction.</u> Each of the metadata fields listed in Exhibit A will, where possible, be preserved and extracted.

4.9.   <u>Searchable Text.</u>  Searchable Text must be extracted directly from the native Document unless the Document requires redaction, is an image, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs), in which case Searchable Text shall be created using OCR.  Searchable Text shall include all comments, revisions, tracked changes, speaker's notes and hidden text.  Searchable Text from Email shall include all header information that would be visible if the Email were viewed natively including:  (1) the individuals to whom the Email was directed, (2) the author of the Email, (3) any recipients copied or blind copied on such Email, (4) the subject line of the Email, (5) the date and time of the Email, and (6) the names of any attachments.  Searchable Text shall not contain the Bates number or Confidentiality Designation, to the extent reasonably feasible.

4.10.   <u>Exception Files.</u>  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted and/or password protected files) ("Exception Files").  Exception Files that are attached to produced Documents will be produced as a Bates-stamped placeholder in Image Format bearing the legend, "This Document was unable to be processed".  The Parties will meet and confer regarding requests for the production of the native versions of Exception Files and/or efforts to locate passwords for specifically identified Documents protected by passwords.  If the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for resolution.

4.11.   <u>Hard-Copy Documents</u>.  Hard-Copy Documents are to be scanned and produced electronically in Image Format.  Reasonable efforts are to be employed to scan

the pages of Hard-Copy Documents in the same order in which they are maintained in the ordinary course of business; to treat pages that are stapled, clipped, or otherwise clearly appear to be part of the same Document as a single Document; and to treat Documents that clearly appear to be separate Documents as separate Documents.  For Hard-Copy Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where reasonably practicable.  Original Document orientation (*i.e.*, portrait v. landscape) should be maintained.  Searchable Text shall be created using OCR.

5. **Production Format**

5.1.   <u>General.</u>  Except as otherwise provided herein, the Parties will produce Documents in single-page Image Format at a resolution of at least 300 dots per inch (dpi). Spreadsheets (*e.g.*, Excel files), delimited text files (*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv files), photographs, audio, and video files shall be produced in Native Format.  A Requesting Party may request the production of other Documents (*e.g.*, PowerPoint presentations) in Native Format where the production of the native file is reasonably necessary to the Document's comprehension or use, and such request shall not unreasonably be denied.

5.2.   <u>Image Format.</u>  Documents produced in Image Format will be named according to the corresponding Bates numbered images.  All Documents that contain comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.  Each Image Format Document will be branded in the lower right-hand corner with its corresponding Bates number, and in the lower left-hand corner

with its Confidentiality Designation, if any, using a consistent font type and size.  The

Bates number and Confidentiality Designation must not obscure any part of the

underlying image.  If placement of either the Bates number or Confidentiality

Designation will result in obscuring the underlying image, the Bates number or

Confidentiality Designation should be placed as near to its specified position as possible

while preserving the underlying image.

      5.3.    <u>Color.</u>  All documents, with the exception of those described in Paragraph

5.4, will be imaged and produced in single-page, Group IV, black and white TIFF or

color JPEG images.  The Requesting Party may request color images of Documents

where color is reasonably necessary to their comprehension or use, and such request shall

not unreasonably be denied.  Documents produced in color shall be produced as single-

page, 300 DPI JPG images with JPG compression and a high-quality setting as to not

degrade the original image.

      5.4.    <u>Native Format.</u>  Native versions of documents are to be produced for file

types not conducive to image review.  Examples of these file types are: spreadsheets,

audio files, video files.  For Documents produced in Native Format, a Bates-stamped

placeholder in Image Format bearing the legend "This Document has been produced in

Native Format" and a legend indicating the Confidentiality Designation shall also be

produced in the same way as any other Image Format Document.  The native file will be

named by the Bates number of the document (i.e., "BATES00000001.XLS").  A

Requesting Party may request the production of other Documents in Native Format where

the production of the native file is reasonably necessary to the Document's

comprehension or use, and such request shall not unreasonably be denied.

5.5.   <u>Image Load Files.</u>  Documents shall be accompanied by image load files. A standard Opticon (.OPT) file, referencing all produced images, one image per line, will be provided for the importing of images into a document review database.

5.6.   <u>Database Load Files/Cross-Reference Files.</u>  Documents shall be accompanied by a Concordance delimited (*.DAT) load file containing the appropriate link fields and directory information for every file (*e.g.*, image or native files) produced.

5.7.   <u>Metadata.</u>  Load files should include, where the Metadata is reasonably available, the information listed in the Table of Metadata Fields, attached as Exhibit A. The Parties are not obligated to include Metadata for any Document that does not contain such Metadata in the original if it is not possible to automate the creation of Metadata when the Document is collected, with the exception of the following: BegBates, EndBates, BegAttach, EndAttach, Page Count, NativeFileLink (for native files only), ProdVol, Custodian, All Custodians, Application, Time Zone, Redacted and Confidentiality.

A standard Concordance DAT (.DAT) file, in UTF-8 format, containing the metadata fields listed in Exhibit A will be provided for the importing of text, native files, and metadata into a document review database.  The Metadata file shall be delimited according to the following characters:

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 59 |
| Nested Value | \ | 92 |

5.8.   <u>Text Files.</u>  A single text file containing the Searchable Text as described in Section 4.9, *supra*, shall be provided for each Document.  The text file name shall be the same as the Bates number of the first page of the Document with the Document extension ".txt" suffixed.  File names shall not have any special characters or embedded spaces.  Searchable Text shall be provided in UTF-8 with Byte Order Mark format text.

5.9.   <u>Databases, Structured, Aggregated or Application Data.</u>  For requests in which responsive information is contained in a database or other structured or aggregated data source or otherwise maintained by an application, the Parties will meet and confer to determine an appropriate format.  If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

5.10.   <u>Redactions.</u>  The Parties may redact information that is (1) privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity; (2) protected personal information (*e.g.*, credit card numbers, account passwords, SSNs) subject to non-disclosure obligations imposed by governmental authorities, law, or regulation; or (3) protected by confidentiality agreements requiring third-party consent for disclosure, provided that the Producing Party has made a good-faith effort to obtain such consent and such consent was not provided.  Subject to the limitations herein, no redactions for relevance may be made.

(a)   Redacted documents required to be produced in Native Format may be produced in Image Format and searchable OCR text. Otherwise, such Documents shall be redacted in Native Format, or the Parties shall meet and confer on a reasonable method of redaction.

(b)     Attachments to Emails or other Documents whose entire contents can be redacted may be produced as single-page slip-sheets stating that the attachment has been redacted in full.  Slip sheets shall be in the same position in the family as if the withheld Documents had been produced.

(c)     If Documents are produced with Redactions, an electronic copy of the original, unredacted Document shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such Document including any Metadata therein.

5.11.   <u>Document Families.</u>  If any member of a Document Family is determined to be responsive to a Party's document requests, then all members of that Family must also be considered responsive.  Parent-Children relationships within a Document Family shall be preserved through the production of an appropriate Metadata field and shall be Bates-labeled consecutively.

5.12.   <u>Foreign Language Documents.</u>  All documents shall be produced in their original language.  Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the Producing Party shall produce both the original Document and all such English-language versions.  Nothing in this Order shall require a Producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

5.13.   <u>Re-productions.</u>  Notwithstanding any provisions to the contrary, Documents that the Producing Party re-produces in whole or in part from the production files of another litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the other matter, provided that a party will re-produce documents in a different format for good cause shown.

5.14.   <u>Replacement Productions.</u>  Any replacement production will be transmitted with a cover letter or Email to identify the production as a replacement and cross-reference the BegDoc and EndDoc of the Documents being replaced.  Replacement productions shall include load files necessary to link the replacement file to other previously produced document family members.  Where the images for a replacement Document occupy more pages than the images for the original Document, the Producing Party shall apply an appropriate numerical suffix to the Bates number of the replacement images (*e.g.*, ABC000123.001 to ABC000123.005).  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

5.15.   <u>Production Media.</u>  The Producing Party will provide the production data via high speed SFTP site, electronic media (hard drive, thumb drive, DVD or CD), or by way of other electronic transfer, as between accounts at a cloud provider (subject to prior agreement with the Requesting Party) ("Production Media").  For any production exceeding five (5) terabytes in size, the Producing Party shall provide the production data on physical media (hard drive, thumb drive, DVD or CD) to arrive no later than the day any production is due.  The Producing Party shall encrypt the production data, and the

Producing Party shall forward the password to decrypt the production data separately from the SFTP site or electronic media to which the production data is saved.  Each piece of Production Media shall identify:  (1) the Producing Party's name; (2) a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"), as well as the volume of the material in the production (*e.g.*, "-001," "-002"); (3) the production date; and (4) the Bates number range of the materials contained on the Production Media.

6.      **Privilege Log**

6.1.    Pursuant to Local Civil Rule 26.2, documents that are withheld on privilege grounds will be identified in a privilege log provided within thirty (30) days of substantial completion of a party's document production.  Challenges to documents withheld for privilege may be made after this deadline notwithstanding that any deadline for Party document discovery has passed.

6.2.    The Producing Party shall provide the Requesting Party with a log of the Documents withheld for privilege containing the following information, to the extent reasonably available:

(a)     <u>For Emails</u>: From, To, CC, BCC,

(b)     <u>For E-Messages</u>: Type, Channel

(c)     <u>For E-Documents</u>: Author

(d)     <u>For all Documents</u>: Custodian, Date, Privilege Basis, Privilege Description, Attorney(s), and Privilege Log ID.

6.3.    "Privilege Basis" refers to the legal basis for withholding the document (*e.g.*, Attorney-Client Communication, Attorney Work Product).  "Privilege Description" refers to a description justifying the Privilege Basis, including as appropriate, the subject matter of the legal advice, the relevant attorney(s) involved (to the extent not apparent

from the Metadata), and/or the litigation matter for which the Document was prepared. To the extent a common interest is asserted, that shall be indicated in the Privilege Basis. The Privilege Description shall be sufficiently detailed so as to allow the Receiving Party to fairly evaluate the claim of privilege or immunity.  The same Privilege Description may be used for multiple Documents so long as the Privilege Description is accurate.

6.4.    In-house attorney names shall be designated with an asterisk; outside counsel attorney names will be designated with a double asterisk.  To the extent attorneys are not identified in the above fields, they shall be identified in the Privilege Description or in a separate field.

6.5.    Information to be included in the log may be generated from available Metadata so long as it is reliable.

6.6.    A single Document containing multiple Email messages (*i.e.*, an Email chain) may be logged as a single entry.  If only part of a chain is privileged, the privileged content should be redacted and the remaining content in the chain should be produced.

6.7.    A Document Family (*e.g.*, an Email and its attachments) may be logged as a single entry so long as the entire Family is privileged and the log entry accurately describes both the Parent and its attachment(s).

6.8.    A Party is not required to log redacted Documents provided that (1) a Metadata field is provided indicating what documents are redacted, and (2) the Party agrees to provide additional information in response to reasonable, individualized requests where the basis for a redaction is unclear on the face of the redacted document itself.

6.9.    Privileged communications concerning the litigation involving trial counsel that post-date the filing of the Complaint on August 6, 2022, need not be included on the privilege log.

6.10.    A Party who re-produces Documents from other matters in satisfaction of its discovery obligations in this litigation must also produce any associated privilege logs. A Party may produce such privilege logs in their original format, even if the privilege logs do not comply with the requirements of this Order.  However, the burden shall remain on the Producing Party to substantiate any privilege assertion reflected in such privilege log.

7.    **Non-Party Documents**

7.1.    A Party that issues a subpoena upon any non-party ("Issuing Party") shall include a copy of this Order and any protective order agreed and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth herein, to the extent reasonably feasible.  The Parties shall also provide a copy of this Order to subpoenas served in this litigation prior to the date of this Order.

7.2.    The Issuing Party shall produce to the non-issuing party a copy of any Documents and ESI (including any metadata) obtained under subpoena to a non-party in accordance with the Federal Rules of Civil Procedure and subject to all the procedures and protections set forth in any protective order agreed and/or entered in this litigation.

8.    **Limitation, Non-Waiver and Modification**

8.1.    This Order applies to Documents produced on or after the date this Stipulated Order is fully executed by the Parties.

8.2.     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including Metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

8.3.     The Parties do not waive (1) any privileges, except as specifically required herein, and any such waiver shall be strictly and narrowly construed and shall not extend to other matters or information not specifically described herein, or (2) any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

8.4.     The parties recognize additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Protocol is intended to, or does, restrict the ability of any Party to request additional information or seek additional relief from the Court.  The parties each retain the right to seek exceptions, amendments, or modifications to this Protocol from the Court.

8.5.     This Order may be modified by a further Stipulated Order of the Parties or by the Court for good cause shown.  Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order Re: Discovery of Electronically Stored Information", and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

| | |
|---|---|
| **LOOMIS SAYLES TRUST COMPANY, LLC**<br>By:<br>*/s/ Matthew C. Baltay*<br>FOLEY HOAG LLP<br>Matthew C. Baltay (pro hac vice)<br>Dean Richlin (pro hac vice)<br>Leah S. Rizkallah<br>Natalie F. Panariello (pro hac vice)<br><br>155 Seaport Blvd.<br>Boston, MA 02210<br>1301 Avenue of the Americas, 25th Floor<br>New York, NY 10019 | **CITIGROUP GLOBAL MARKETS INC.**<br>By:<br>*/s/ Michael A. Paskin*<br>CRAVATH, SWAINE & MOORE LLP<br>Michael A. Paskin<br>Helam Gebremariam<br><br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Telephone: (212) 474-1000<br>Facsimile: (212) 474-3700<br>mpaskin@cravath.com<br>hgebremariam@cravath.com |

Dated:  January 23, 2023

SO ORDERED:

Dated: _____January 24_____, 2023

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

**Exhibit A Table of Metadata Fields**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | The Custodian | All |
| ALLCUSTODIANS | The Custodian of the Document as well as for all copies of the Document that were removed as a result of de-duplication | All |
| BEGBATES | Beginning Bates number (production number) | All |
| ENDBATES | Ending Bates number (production number) | All |
| BEGATTACH | First Bates number of the first Document in the Document Family | All |
| ENDATTACH | Last Bates number of the last Document in the Document Family | All |
| PARENTBATES | Beginning Bates number for the parent e-mail of a family (will not be populated for documents that are not part of a family) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type | All |
| DOCEXTENSION | File extension of the document. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for the Searchable Text file | All |
| PARENT DATE | Date of the Parent Document (mm/dd/yyyy hh:mm:ss AM/PM) | All |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FOLDER | Folder location of the Email within the Native Email application | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |
| CC | Carbon Copy Recipients | Email |
| BCC | Blind Carbon Copy Recipients | Email |
| EMAIL SUBJECT | Subject line of Email | Email |
| DATETIMECREATED | Date and time created (mm/dd/yyyy hh:mm:ss AM/PM) | Email |

| Field | Definition | Doc Type |
|---|---|---|
| DATETIMESENT | Date and time sent (mm/dd/yyyy hh:mm:ss AM/PM) | Email |
| DATETIMERCVD | Date and time received (mm/dd/yyyy hh:mm:ss AM/PM) | Email |
| EMAIL TYPE | Type of Email item (*e.g.*, Email, calendar item, contact, note, task) | Email |
| CONVERSATION ID | Identifier indicating the Email thread to which an Email belongs | Email |
| FILENAME | Original file name at the point of collection | E-Document |
| FILESIZE | Size of the file | E-Document |
| TITLE | Title of document or title field extracted from Metadata of non-Email ESI | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM/PM) | E-Document |
| LAST MODIFIED BY | Last person who modified (saved) a Document | E-Document |
| LAST MODIFIED DATETIME | Last Modified date and time (mm/dd/yyyy hh:mm:ss AM/PM) | E-Document |
| E-MESSAGE TYPE | The type of electronic message (*e.g.*, Text Message, Slack, Microsoft Teams, Instant Bloomberg, etc.) | E-Messages |
| E-MESSAGE PARTICIPANTS | Senders, recipients, subscribers, or others who have the ability to participate in a group message or channel | E-Messages |
| E-MESSAGE SUBJECT | Subject or name of the messaging thread or topic, if any | E-Messages |
| E-MESSAGE CHANNEL | Name of persistent messaging group or chat room, if any | E-Messages |
| DOCUMENT TYPE | Descriptor for the type of Document, including: "**Email**" for all Emails; "**E-Message**" for all E-Messages; "**Attachment**" for files that were attachments to Emails or E-Messages; "**Electronic File**" for electronic files not attached to Emails or E-Messages; and "**Hard Copy**" for Hard-Copy Documents; | All |
| REDACTED | "Yes" for redacted Documents; "No" for un-redacted Documents | All |

| Field | Definition | Doc Type |
|---|---|---|
| REDACTION BASIS | Basis of redaction (*e.g.*, Attorney-Client Communication, Attorney Work Product). If there is more than one basis, the bases will be separated by semi-colons. | All |
| PRODVOL | Production volume of data | All |
| CONFIDENTIALITY | Confidentiality Designation if assigned pursuant to any applicable Protective Order or stipulation | All |
| TIMEZONE | Time zone used during processing of data | All |
| SOURCE | The producing party | All |
| ATTACHIDS | The IDs of the documents that are attached to the produced document | All |
| PARENT ID | Indicates the parent ID for an attachment or embedded document. The parent document ID field should be set for all attachments (including attachments that are Emails) but should not be set for parents. | E-Document |
| MESSAGE ID | The message ID of an Email or other type of electronic message | Email, E-Message |
| EXCEPTION | "Yes" for Documents that were processing or extractions exceptions, blank/null if not present | All |
| EXCEPTION REASON | Reason the item is identified as an exception | All |