# CRAVATH

Michael A. Paskin
mpaskin@cravath.com
T+1-212-474-1760
New York

July 7, 2023

*Loomis Sayles Trust Company, LLC v. Citigroup Global Markets Inc.*, No. 1:22-cv-6706-LGS

Dear Judge Schofield:

        Defendant ("CGMI") respectfully submits this response to Plaintiff's ("LSTC") June 27, 2023 request for a pre-motion conference in connection with its anticipated motion for class certification. (Dkt. 89.) LSTC's motion is premature, as class certification briefing should come after the Court decides CGMI's pending dispositive motion. In any event, certification should be denied in this highly unusual attempt to transform an ordinary dispute between an executing broker and its institutional asset manager client into a class action.

    **I.**    **The Court should defer consideration of class certification until after resolution of dispositive motions.**

        CGMI's motion to dismiss, converted by the Court to a motion for summary judgment, remains pending. (Dkts. 35, 51.) Although CGMI believes the record already before the Court establishes the basis for summary dismissal of LSTC's claims, CGMI also anticipates arguing that there are additional reasons to grant summary judgment based on the fact and expert discovery record, which CGMI will explain at the upcoming status conference. Because resolving any dispositive motion in CGMI's favor will dispose of the case, doing so before briefing class certification would be more efficient for the parties and the Court. *See Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification [is] well within the discretion of the district court[.]"). Such staging is "particularly appropriate" when "the defendant makes a specific request that the court rule on its motion for summary judgment before deciding the class certification issue". *Turner v. Gen. Motors Acceptance Corp.*, 980 F. Supp. 737, 745 n.5 (S.D.N.Y. 1997) (citing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941–42 (7th Cir. 1995)).

        Those efficiencies are also especially prevalent here because the class certification issues in this case are not compelling or as "straightforward" as LSTC suggests. (Dkt. 89 at 2.) Indeed, although LSTC rushed to move for class certification in October 2022 before any discovery had taken place, it now suggests for the first time that it will rely on purported expert testimony from Dr. Mark Zmijewski, supposedly in support of class certification. (*Id.* at 3.) But neither Dr. Zmijewski's report nor Plaintiff's other experts addressed class certification at all,

**NEW YORK**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

and, accordingly, CGMI's rebuttal reports did not analyze class certification issues either. While it is impossible for CGMI to guess how LSTC will weave expert testimony into its class arguments, it is now apparent that CGMI will have to engage in new expert analysis to respond to what LSTC conjures up. That will all be unnecessary if the Court grants summary judgment for CGMI, which argues in favor of deferring class certification until after dispositive motions.

## II.   In any event, class certification is inappropriate.

CGMI is aware of no certified class comprised of the clients of an investment manager suing a broker for allegedly failing to follow instructions in executing stock trades. This should not be the first class action of its kind. Rather, the Court should treat this case as what it actually is—a bilateral dispute between an executing broker (CGMI) and its sophisticated institutional client (Loomis)[1] regarding two large equity trades. That Loomis/LSTC directed the proceeds of those trades to be distributed among various accounts of their (not CGMI's) clients, should not transform this into a class action. Indeed, by styling this case as a class action, Loomis/LSTC are seeking to protect their own interests and avoid scrutiny—and potential liability—from their clients who comprise the purported class here. The Court should refuse to grant certification of this highly unusual putative class as failing to comply with the requirements of Rule 23. *See Martinez v. Barasch*, No. 01 Civ. 2289 (MBM), 2004 WL 1367445, at *5 (S.D.N.Y. June 16, 2004) ("[T]he class action device may not be used simply for the personal purposes of a named plaintiff." (citing *Chateau de Ville Prods., Inc. v. Tams–Witmark Music Libr., Inc.*, 586 F.2d 962, 965–66 (2d Cir.1978))).

### A.   LSTC is differently situated from the absent class members, making it and its counsel conflicted and inadequate.

Named Plaintiff LSTC does not "possess the same interest[s]" as the absent class members. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625–26 (1997). Indeed, if class members were harmed, they might appropriately look to Loomis/LSTC as responsible, whether for making poor investment decisions, failing to exercise due care or for providing the trading instructions at issue to CGMI. That puts LSTC in conflict with absent class members, because LSTC has an incentive to defend its (and Loomis's) own conduct, even if their actions contributed in whole or in part to the alleged losses suffered by their clients. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (Rule 23(a)(4) considers "whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members

---

[1] LSTC provides trustee services (including investment management) pursuant to contractual relationships with various trusts. It is a corporate affiliate of Loomis Sayles & Company, L.P. ("Loomis"), a registered Investment Advisor that provides its services to various clients pursuant to contractual relationships. (*See* Compl. ¶ 1.) The ultimate parent of both is Natixis Investment Managers ("Natixis"), one of the world's largest asset management firms (*see* Compl. ¶¶ 14–17), with $1.2 trillion under management. LSTC and Loomis share "dual" employees, including the key fact witnesses in this case: Aziz Hamzaogullari (CIO of Loomis and portfolio manager for the $60 billion GES portfolio), Nicholas Gagnon and Daniel Maturi (Co-Heads of Trading for GES). As concerns the interactions with CGMI, there is no difference between LSTC and Loomis—they are one and the same, and Gagnon and Maturi communicated trading instructions on behalf of both to CGMI on March 18, 2022.

might undermine that incentive".). An unconflicted representative would, at the very least, consider suing Loomis/LSTC, either in addition to, or in lieu of, CGMI. LSTC did no such thing, and chose instead to go on the offensive and blame CGMI entirely. That is classic self-interest, and LSTC's efforts to turn this into a class action to avoid scrutiny of its own conduct is not supported by Rule 23.

The same conflict afflicts LSTC's counsel, Foley Hoag LLP ("Foley"), which has already appeared as counsel to Loomis as well. Forced to choose between the unconflicted interests of the absent class members and circling the wagons to protect Loomis/LSTC from potential scrutiny, client defections and liability for claims asserted by Loomis clients who might seek to hold their investment advisors responsible for any losses, Foley has unequivocally chosen to represent the interests of Loomis (its longtime client) first and foremost. Indeed, Foley's inadequacy as class counsel is painfully obvious if one only imagines the advice it would give if an unaffiliated Loomis client asked for an explanation of Loomis's role and potential responsibility for the alleged trading losses. *See Martinez*, 2004 WL 1367445, at \*6 (finding class counsel conflicted by virtue of relationship with named plaintiffs in one labor union, whose interests were antagonistic to those of other class members in a rival labor union).

## B. There are serious questions regarding numerosity and superiority.

"[T]he numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors[.]" *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (upholding denial of certification where class of over 100 putative members was "limited and identifiable, and composed of sophisticated . . . investors"). Here, the absent class members are "specifically identifiable trusts, funds, and accounts" that own the underlying investment accounts managed by LSTC and Loomis (Dkt. 89 at 2), and are the beneficiaries of the March 18, 2022 trades. At least 25 of those accounts are affiliates of Loomis (e.g., funds managed by Loomis, LSTC or Natixis) while others are unaffiliated clients (e.g., funds that contract with Loomis for investment management services). The bottom line is there are no "unknown" absent class members, and LSTC has pointed to nothing that suggests that joinder here is impracticable. *See Pennsylvania Pub. Sch. Emps.*, 772 F.3d at 120 ("[P]racticability [of joinder] depends on all the circumstances surrounding a case, not on mere numbers." (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993)).

These same practicability concerns implicate questions of superiority under Rule 23(b)(3). It is clear that LSTC already has consent to sue on behalf of certain trusts. (*See* Compl. ¶¶ 4–6). LSTC and Loomis could easily contact all of their clients to seek similar consents, and thus "joinder could equally serve the interests of judicial economy". *Deen v. New Sch. Univ.*, No. 05 Civ. 7174 (KMW), 2008 WL 331366, at \*3 (S.D.N.Y. Feb. 4, 2008) (denying certification to putative class of 110 where plaintiffs failed to show joinder was inferior). While that might be a tedious process for LSTC and Loomis, and some of their clients might refuse consent—or even take issue with Loomis's conduct and role in the trades at issue—that hurdle is not a reason to certify a class. Indeed, LSTC/Loomis's use of Rule 23 to attempt to bring claims on behalf of Loomis's clients that they otherwise are not authorized to bring absent obtaining express consent only serves to highlight the divergent interests between Loomis/LSTC and the class they purport to represent.

Respectfully submitted,

/s/ Michael A. Paskin

Michael A. Paskin

The Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

VIA ECF

Copies to:

FOLEY HOAG LLP
Matthew C. Baltay (*pro hac vice*)
Dean Richlin (*pro hac vice*)
Kenneth S. Leonetti
Leah S. Rizkallah
Amanda S. Coleman
Natalie F. Panariello (*pro hac vice*)

mbaltay@foleyhoag.com
drichlin@foleyhoag.com
ksl@foleyhoag.com
lrizkallah@foleyhoag.com
acoleman@foleyhoag.com
npanariello@foleyhoag.com