

155 Seaport Blvd.
Boston, MA 02210
617.832.1000 main

Matthew C. Baltay
617-832-1262
mbaltay@foleyhoag.com

July 18, 2023

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse, 40 Foley Square
New York, NY 10007

Re: *Loomis Sayles Trust Company, LLC v. Citigroup Global Markets Inc.*, 22-cv-6706-LGS

Dear Judge Schofield:

Pursuant to Rule III.A.1 of Your Honor's Individual Rules and Procedures for Civil Cases, Plaintiff Loomis Sayles Trust Company, LLC ("LSTC") respectfully requests that movant Citigroup Global Markets Inc. ("Citigroup") be required to support its converted summary judgment motion with a L.R. 56.1 statement of undisputed facts, and that LSTC be permitted to file a supplemental memorandum and evidence in opposition to Citigroup's converted motion. Use of Rule 56.1 statement will clarify which facts are truly undisputed and bring into focus the disputed facts that are central to the motion. Supplementation will allow the parties to present evidence (and argument) on critical facts adduced through discovery since mid-February.

When the Court converted Citigroup's motion to dismiss to one for summary judgment, document production had just begun. Since then, the parties have produced thousands of documents, taken third-party discovery, deposed 11 fact witnesses, served eight expert reports, and deposed three experts (with five more scheduled). Five months of discovery has further illuminated the litany of disputed factual issues that are at the heart of Citigroup's motion, including: (1) when the agreement governing the Affected Orders was formed; (2) if (and when) the agreement was modified; (3) the meaning of the contractual terms based on industry jargon; and (4) whether Citigroup had and used discretion. The current record is insufficient for the Court to properly grant summary judgment. While Citigroup concedes that supplementation is proper, Dkt. 96, it wishes to limit it to three-page letters with no statement of undisputed facts. This is patently inadequate. Citigroup's effort to deny LSTC a reasonable and fair opportunity to oppose summary judgment and deprive the Court of a full and appropriate record to decide the converted motion should be rejected. The Court should either deny Citigroup's motion altogether or allow appropriate briefing consistent with standard practice for summary judgment. While LSTC cannot sufficiently set forth in this letter all the newly-adduced evidence supporting its opposition to summary judgment, below are select examples of the extensive evidence contradicting and undermining the positions Citigroup takes in its converted motion.

First, the interpretation of the trader jargon in the communications is disputed. The meaning of the parties' agreement (*i.e.*, the trade instructions) at the center of this dispute relies on industry-specific jargon and industry custom and usage. Dkt. 42 at 9; Dkt. 52. LSTC's experts, relying on industry custom and usage, have issued reports and provided expert testimony supporting its position that the parties' communications establish LSTC directed Citigroup to

exercise its discretion in determining how best to execute the March 18 orders and never instructed Citigroup to enter the orders all MOC. Pugliese Report ¶¶ 35, 37; Estella Report ¶¶ 45-46. Citigroup previously took the position that the agreement at-issue requires no interpretation of trader jargon by experts or consideration of custom and usage. Dkt. 36 at 12-15; Dkt. 54. However, in a report served in May, Citigroup's industry expert, Christian Zarcu, concedes that the meaning of the parties' communications depends on his "experience as a program trader who is familiar with 'trader speak." Zarcu Report ¶¶ 49-56, 89, 94. Zarcu offers a meaning competing with that of LSTC's experts, including, for example, a different meaning for the term "aggressive," and a differing interpretation of the question "looking to complete all except maybe SAM?" *Id.*, ¶¶ 49, 56. In doing so, he relies on industry practice that diverges from and is disputed by LSTC's experts. Accordingly, Citigroup concedes that expert testimony is required to give accurate meaning to the parties' communications and makes clear that such meaning presents a critical issue of disputed fact.

Second, evidence of Citigroup's conduct on March 18 undercut its claims. For example, Citigroup appears to claim (though it has not clearly set forth its position to date) that the contract was only formed in the final moments before the close at 3:48 p.m. However, discovery shows that Citigroup understood that a contract was formed at 2:31 p.m. and that Citigroup started trading based on those instructions shortly thereafter.

Third, many of Citigroup's own documents undercut its interpretation of the communications and support LSTC's understanding. For example, a document detailing Citigroup's ███████████████████████████████████████████████ Ex. 15.[1] This contradicts Citigroup's claim that use of the term "aggressive" means that Loomis instructed Citigroup to enter the entire quantity for SHOP and CL—which were 95% and 72%, of the closing auction volume, respectively—as MOC. Evidence of the parties' trading history also provides crucial context for understanding the parties' course of dealings and meaning of their communications.[2] For example, the March 18 communications are markedly different from prior trade instructions such as a January 28, 2022 chat in which Loomis instructed Citigroup: "SELL 37 US for 486482 MOC," directing Citigroup to execute the entire trade as MOC orders. Ex. 16. The parties' trade history also shows that Loomis regularly gave and Citigroup regularly accepted instructions that required Citigroup to exercise discretion in execution. Exs. 16, 17.

Third, discovery has also established that the applicable trading instructions were communicated at 2:30 to 2:31 p.m. and never changed. Citigroup's position has been that a lone question from Loomis to Citigroup at 3:48 p.m., "Thanks…And looking to complete all except maybe SAM?" was a "final and express directive" to place the full SHOP and CL orders as MOC, that there is zero ambiguity as to the meaning of this question, and that it never had any discretion in the orders. Dkt. 36 at 13, 15; Dkt. 43 at 5; Dkt. 54. The depositions of Citigroup's own witnesses and experts contradict this. For example: (1) Chiomastro's supervisor, Charles

---

[1] LSTC cites evidence in this letter, which is will submit if the Court permits supplementation.
[2] While Citigroup cites a small portion of the parties' history in support of its position, Dkt. 63, ¶ 4, its seeks to deprive the Court of the full record of that history.

O'Connell, testified that the trading instructions were "ambiguous," O'Connell Tr. at 234-35; (2) Chiomastro entered many of the orders before 3:48 p.m., and never sought approval from LSTC, *see, e.g.*, Exs. 21, 126, 150; CGMI_00014708; Pugliese Report ¶¶ 47-50; (3) Chiomastro testified that when he asked Loomis, "[a]re they same instrux?" at 3:23 p.m. he was referring back to the instructions provided for the second wave at 2:30-2:31 p.m., Chiomastro Tr. at 253-54; (4) Citigroup's expert, Hollie Mason, testified ████████████████████ ████████████████████████████████████ Mason Tr. at 135-36; (5) Chiomastro and other Citigroup traders agreed that Loomis's "do not have to complete on any of the second wave" instruction meant that Citigroup was not mandated to complete the entire order regardless of price impact, Chiomastro Tr. at 215; Brown Tr. at 158-59; and (6) O'Connell testified that, as of 3:48 p.m., ████████████████████████████████████████████████ ████████████████████████████████████ O'Connell Tr. at 254-55. LSTC maintains that the instructions were relayed at 2:30-2:31 p.m., gave Citigroup discretion, Citigroup understood and acted on those instructions, and they never changed. Dkt. 42, 58, 60. In light of the above referenced testimony from Citigroup, there is, at the very least, ambiguity as to the purpose and meaning of the question at 3:48 p.m., and whether it amended the agreement is a question of fact. A complete evidentiary record is required to resolve these factual disputes.

Fourth, Citigroup asks the Court to conclude that it exercised no discretion regarding the Affected Orders, *see* Dkt. 36 at 1, but Citigroup's own expert concedes that ████████████ ████████████████████████ Mason Tr. at 112; 148-49. Evidence from Citigroup's records also demonstrates that it understood it had and repeatedly exercised discretion in handling the orders. For example: (1) between 2:49 and 2:52 p.m., Citigroup decided to place the full orders for four names and only 50% of the orders for remaining names as MOC, showing that Citigroup was exercising discretion on the quantity of shares to enter MOC and determined that SHOP and CL could not be entered MOC without further analysis, Exs. 21, 126, 148; (2) at 3:42 p.m., Citigroup, routed a second MOC order for SHOP without informing Loomis, Ex. 125; (3) Citigroup placed three MOC orders for ADP at various points without ever informing Loomis, CGMI_00014685; 00014708, and (4) between 3:48 and 3:49, the critical minutes prior to the 3:50 cutoff to modify MOC orders, Citigroup's floor broker informed Chiomastro of persisting large imbalances for SHOP and CL, Citigroup did not share this information with Loomis, and in the face of this information, decided to enter additional MOC orders for SHOP and CL, Ex. 82.

Fifth, while Citigroup contends that "it owed no duty to LSTC beyond executing as instructed," Dkt. 43 at 7, ████████████████████████████████████ ████████████ Exs. 28, 88, its trader admitted as much, Chiomastro Tr. at 293-95, and its expert states that, as a broker-dealer, Citigroup owed Loomis the duty of best execution, requiring it to use reasonable diligence to obtain the best execution possible, Mason Report at ¶ 96. Discovery has revealed ample evidence that Citigroup egregiously breached its duty to the Class and caused a price dislocation of nearly 13% for SHOP and 1.5% for CL.

For the reasons set forth above, the Court should require Citigroup to submit a statement of undisputed facts and allow LSTC adequate opportunity to oppose based on the developed evidentiary record. At a minimum, LSTC requests leave to supplement its opposition.

Respectfully submitted,

*/s/* Matthew C. Baltay

cc: Counsel of Record (via ECF)