UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
LOOMIS SAYLES TRUST CO., LLC,                               :
                                        Plaintiff,          :    22 Civ. 6706 (LGS)
                                                            :
                    -against-                               :    **OPINION & ORDER**
                                                            :
CITIGROUP GLOBAL MARKETS, INC.,                             :
                                        Defendant.          :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Loomis Sayles Trust Co., LLC, brings this action against Defendant Citigroup Global Markets, Inc., asserting breach of contract and breach of fiduciary duty related to Defendant's execution of two securities trades on behalf of Plaintiff and its affiliated investment advisory firm, Loomis, Sayles & Company, L.P., on March 18, 2022. The Complaint alleges claims for breach of contract and breach of fiduciary duty. Defendant moves for summary judgment. For the following reasons, Defendant's motion is denied in part and granted in part.

I. BACKGROUND

The following undisputed facts are drawn from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and other submissions on this motion. The facts are undisputed or based on record evidence drawing all reasonable inferences in favor of Plaintiff as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

Plaintiff engaged Defendant as a broker on March 18, 2022, to execute several large orders on its behalf. March 18, 2022, fell on a day known as a "witching day" in the financial markets, which occurs four times a year. Due to a confluence of events, the stock market experiences greater than normal liquidity on that day, offering the opportunity to complete a

large number of trades, in the millions of shares, without impacting the prices of the assets. The closing auction is the last event of every trading day and is a single-price auction where trades are executed at the closing price. Trades during the closing auction can be placed throughout the day as a market-on-close ("MOC") order, which must trade at the close regardless of price. Or trades can be placed as a limit-on-close ("LOC") order, which will trade only if the price at the close is equal to or better than a prescribed price. The deadline for placing MOC and LOC orders is 3:50 P.M., ten minutes before the market close.

This lawsuit concerns trades of two stocks that Defendant executed on behalf of Plaintiff on March 18, 2022. On that day, Plaintiff placed two waves of trade orders with Defendant in order to rebalance Plaintiff's portfolios. The second wave concerned nine stocks, including Shopify, Inc. ("SHOP") and Colgate ("CL"), which are at issue here. Pursuant to this order, the trades at issue were the purchase of 780,856 shares of SHOP and the sale of 5,236,139 shares of CL. Defendant placed all the shares for these orders into the closing auction on March 18 as MOC orders, which are non-limit orders executed close to the end of the market day. The Complaint alleges that, due to the volume of shares at issue, placing them into the closing auction with MOC orders caused the stock price to fluctuate, causing Plaintiff and its customers losses of more than $60 million on the purchase of SHOP, and more than $10 million on the sale of CL, for a total loss of $70 million.

The parties communicated about the trades at issue for about 90 minutes, beginning at 2:18 P.M. The trades were placed just before 3:50 P.M., the deadline for placing MOC and LOC orders. The parties' communications with each other all took place via Bloomberg chat or recorded telephone calls.

On Defendant's previous motion, the Court held that the parties' communications about the two stocks over this 90-minute period did not reflect the parties' unambiguous agreement that Defendant was to trade all shares of CL and SHOP with MOC orders for sale in the closing auction on March 18.  The Court found that the parties' 90-minute communications constituted either an ambiguous agreement or no agreement at all because of no meeting of the minds.  Defendant's motion was denied without prejudice to renewal upon submission of evidence in addition to the parties' 90-minute communications.

On this motion, the parties have supplemented the record with additional evidence, including the parties' communications with each other after the trades, each party's internal communications before, during and after the critical 90-minute period, two of Defendant's disclosure documents, deposition testimony and expert reports.

## II. STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[1]  The moving party bears "[t]he burden of showing that no genuine factual dispute exists," and the court, "in assessing the record to determine whether there is a genuine issue as to a material fact, [must] resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

3

As a threshold matter, New York law applies. Plaintiff's claims arise out of state law, and the parties cite New York cases or federal cases applying New York law. "[S]uch implied consent is sufficient to establish the applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

### III. DISCUSSION

#### A. Breach of Contract

The parties do not dispute that they formed a contract for Defendant to execute Plaintiff's trade orders on March 18 and that the contract consists of the parties' Bloomberg chats and two telephone conversations during the 90-minute period on March 18. Defendant argues that those communications and extrinsic evidence make clear that Plaintiff agreed that Defendant should trade the full CL and SHOP orders MOC on March 18 and that no reasonable jury could find otherwise. Defendant's motion for summary judgment on the breach of contract claim is denied because the record evidence could support Plaintiff's contrary interpretation -- that Plaintiff did not agree that Defendant should place the entirety of the SHOP and CL orders as MOC without regard to price dislocation.

##### i. Contract's Terms

Defendant briefly renews its argument that the contract is unambiguous on its face. That argument was already rejected by a prior decision in this case denying Defendant's motion to dismiss, which the Court converted to a limited motion for summary judgment. The law of the case doctrine holds that "[w]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, absent cogent and compelling reasons to the contrary." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 101 (2d Cir. 2024). "Although not binding, the doctrine counsels a court against revisiting its prior rulings in

4

subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013); *accord Reches v. Morgan Stanley & Co. LLC*, 736 Fed. App'x 306, 307 (2d Cir. 2018) (summary order).

The July 28, 2023, Order assessed the terms of the contract, consisting of the parties' 90-minute communications. The Order held that either the contract was ambiguous or that there was no meeting of the minds sufficient to form a contract. On this motion, the parties do not dispute that a contract was formed. In relevant part, the July 28, Order held that "ambiguity exists in the parties' contract sufficient to preclude summary judgment." Defendant identifies no "cogent and compelling reason[]" to alter that holding. For the reasons stated in the July 28, 2023, Order, the contract's terms are ambiguous.

### ii. Extrinsic Evidence

Summary judgment is denied on the breach of contract claim because the record evidence does not support a single interpretation of the parties' contract such that no reasonable jury could interpret it otherwise. When a contract's "language is susceptible to different reasonable interpretations, and where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993); *accord Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 Civ. 3103, 2019 WL 652592, at *3 (S.D.N.Y. Feb. 15, 2019). "If there is conflicting extrinsic evidence regarding the parties' intent, the district court may only identify the issues at the summary judgment stage, not resolve them." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir. 1990); *accord Conmed*

*Corp. v. Fed. Ins. Co.*, No. 23 Civ. 766, 2024 WL 2976604, at *6 (N.D.N.Y. June 13, 2024). Summary judgment is appropriate only if "the [extrinsic] evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary, or if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 88 (2d Cir. 2015).

The extrinsic evidence presented is not "so one-sided" to justify summary judgment here. Defendant identified external and internal communications regarding Plaintiff's interest in executing the trades on March 18 to maximize liquidity -- supporting an interpretation that Defendant was instructed to sell SHOP and CL MOC (i.e. at the close regardless of price). But Plaintiff identified contrary evidence, or a different interpretation of the same evidence, to support its contrary interpretation of the parties' agreement.

First, Defendant argues that the communications between the parties before March 18 confirm that Plaintiff prioritized the liquidity of trading at the close on March 18 and foreclose the argument that Plaintiff "had no appetite for closing auction price movements." However, the extrinsic evidence predating March 18, 2022, is not "so one-sided." Defendant relies on the parties' March 9, 2022, call, but that call was unrelated to any specific trades, and Defendant also discussed its ability to trade in ways other than a direct MOC, including LOCs which would limit Plaintiff's loss. That Plaintiff was interested in the liquidity afforded on March 18, does not inevitably mean that its later instructions meant to do so at all costs.

Second, Defendant relies on Plaintiff's internal communications and actions from March 16 to 18. "[A] party's uncommunicated subjective intent cannot supply the ultimate meaning of an ambiguous contract," but such communications, "while not controlling, may shed light on the

6

state of those negotiations and could bear on that party's objective actions." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125-26 (2d Cir. 2006) (New York law); *accord GE Funding Cap. Mkt. Servs., Inc. v. Neb. Inv. Fin. Auth.*, No. 15 Civ. 1069, 2017 WL 2880555, at *4 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019)s.  Even to the extent extrinsic evidence of Plaintiff's subjective intent can be considered here, it does not conclusively support Defendant.  As above, while Defendant argues the internal communications reveal that Plaintiff was interested in increasing liquidity, the communications also suggest that Plaintiff did not want to "destroy[] the price" Plaintiff's internal pre-trade communications therefore do not unambiguously support Defendant's interpretation of the contract.

Third, Defendant points to Plaintiff's words and conduct after the trades were placed but before Plaintiff learned the SHOP closing price as evidence of Plaintiff's "acknowledgement and acceptance that their strategy involved some price risk but ensured completion of the trades." However, this evidence in general may be interpreted to reflect Plaintiff's general objective but not necessarily the terms of its agreement with Defendant.  At a more granular level, the communications are not one-sided.  For example, in the 4:06 P.M. call between Gagnon and Chiamastro, in Defendant's favor, Gagnon stated, "[I]n hindsight, what we're thinking is -- great match off everything" and "We probably would've lost the liquidity" by using LOCs.  Defendant interprets the call to indicate that Plaintiff was happy with the trade, but Gagnon also made statements that reasonably could be interpreted to show that Plaintiff was unhappy.  In Plaintiff's favor, Gagnon stated that the stocks "moved a little bit more than we thought they would" and that "we think that probably would have been better" to "have been participating with a limit, like, a tight limit."  Chiomastro responded, "Yeah.  Yeah.  I'm -- for sure."  He then stated, "You know, next time, yeah, we can definitely try and keep a tight, tight limit and -- and see what we

7

can get done" and "Yea, CL is not great." A reasonable jury could view this call as supporting either party.

In addition, a 4:39 P.M. call within Citigroup could support either party's interpretation. In favor of Defendant, O'Connell, said, "I mean, we told the guy we were going to MOC it. He was fine with it. It's a guy at Loomis." In Plaintiff's favor, Brown said, "He just figured he could throw that big of an order on the close and it would get filled without?" and O'Connell responded, "Well, we did" and "What I should have said is, let's limit it, we'll put it, a five percent limit or something."

Finally, Defendant is incorrect that Plaintiff points to "nothing other than the post-hoc, self-serving declarations and deposition testimony of its own traders." As described above, Plaintiff presents extrinsic evidence of conversations immediately following the trades that reasonably support Plaintiff's interpretation of the contract. At this stage of the action, all reasonable inferences must be drawn in Plaintiff's favor as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund*, 24 F.4th at 170. "Because the extrinsic evidence neither supplies an unambiguous interpretation of the terms of the [contract] nor indisputable evidence of the parties' intent . . . [a] district court should not . . . resolve[] these ambiguities on summary judgment." *CP III Rincon Towers, Inc. v. Cohen*, 666 F. App'x 46, 54 (2d Cir. 2016) (summary order).

### B. Best Execution

Defendant "does not dispute that it owed some duty of best execution" to Plaintiff. This duty is construed to be an implied contractual duty and is pleaded as a part of Plaintiff's breach of contract claim. The parties dispute the scope of the duty and whether Defendant acted in accordance with it. Defendant argues that it did not have a duty to protect Plaintiff from its own

8

choices or ensure a specific outcome but only that it "exercise reasonable diligence" in following Plaintiff's instructions by consummating the transaction requested.  Plaintiff argues that Defendant was required to "exercise reasonable diligence" by "performing a meaningful liquidity analysis and using its informed discretion to enter orders in a manner that would not create price dislocation."

Even under Defendant's framing of its duty, summary judgment is inappropriate because the dispute regarding whether Defendant exercised reasonable diligence cannot be resolved here as a matter of law.  Reasonableness determinations are "quintessential jury issues." *Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, 321 (S.D.N.Y. 2004); *see also Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693, 2016 WL 3538379, at *18 (S.D.N.Y. June 22, 2016) (New York law) (noting "the general presumption that reasonableness is a jury question").  "[A] question as to whether the defendant or the plaintiff acted reasonably under the circumstances . . . can rarely be decided as a matter of law," *Andre v. Pomeroy*, 320 N.E.2d 853, 855 (N.Y. 1974).

Here, a jury could reasonably conclude that Defendant either did or did not act with reasonable diligence in executing the transaction requested.  First, as described above, the parties dispute the meaning of the contract and therefore the degree to which Defendant even had discretion to exercise in executing the SHOP and CL trades.  That issue will be resolved by the jury.  Second, Plaintiff argues that Defendant should have, but failed to perform a meaningful liquidity analysis as it had done previously.  For example, on October 8, 2020, Chiomastro "r[an] a pre trade" analysis "to review further" the trades.  Defendant argues that it provided Plaintiff with data to assess the market on March 18, including "data on additional liquidity expected from passive 'Street' trading" as well as auction order imbalances received from floor brokers.  Defendant further argues based on expert testimony that SHOP's closing price was highly

unusual and not reasonably foreseeable, and that neither party was in a position to predict the extent of the trading loss. Whether Defendant acted with reasonable diligence under these and other circumstances the parties discussed is a question for the jury.

### C. Breach of Fiduciary Duty

Defendant's motion for summary judgment on the breach of fiduciary duty claim is granted. The July 28, 2023, Order rejected Defendant's argument that the breach of fiduciary duty claim is duplicative of the breach of contract claim because of the possibility that there was no meeting of the minds between the parties on a material term and therefore no contract. It is now evident that the parties do not dispute the existence of a contract, even though they do not agree on its interpretation. Under New York law, "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); *accord 4720 Third Ave. Hous. LLC v. CA Ventures LLC*, 180 N.Y.S.3d 87, 89 (1st Dep't 2022). The fiduciary duty claim here does not identify any additional duties, misconduct or damages from those identified in the contract claim. The fiduciary duty claim is therefore duplicative of the contract claim and need not proceed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED** on the breach of contract claim and **GRANTED** on the breach of fiduciary duty claim. The parties' motions for oral argument are **DENIED** as moot. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 119, 140 and 141.

Dated: September 26, 2024
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**