**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————
                                                    )
LOOMIS SAYLES TRUST COMPANY, LLC,   )
individually and on behalf of all others similarly  )
situated,                                            )
                                                    )
      Plaintiff,                              )
                                                    )      Civil Case No. 22-cv-6706-LGS
      v.                                      )
                                                    )
CITIGROUP GLOBAL MARKETS INC.,       )
                                                    )
                                                    )
      Defendant.                             )
———————————————————————)


**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

      A.    The Events of March 18, 2022...................................................................3

      B.    Procedural History ....................................................................................4

      C.    The Proposed Amendment to Add Ten Would-Be Class Members as Plaintiffs ....7

ARGUMENT ....................................................................................................................9

I.    The Supreme Court Has Recognized that Absent Class Members Are Entitled to Await Resolution of Class Certification Before Moving to Join...................................................9

II.    The Proposed Amendment to Add the Prospective Plaintiffs Should Be Granted...........11

      A.    Good Cause Exists Because LSTC Has Exercised Diligence Throughout this Case and Denial of Class Certification Constitutes a Change in Circumstance.............12

      B.    Citigroup Cannot Establish Undue Delay or Substantial Prejudice......................14

      C.    The Interests of Justice and Judicial Economy Strongly Favor Amendment. .......18

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC*,
　　155 F. Supp. 3d 448 (S.D.N.Y. 2016)..........................................................................15

*American Pipe & Constr. Co. v. Utah*,
　　414 U.S. 538 (1974)............................................................................. 1, 9-10, 13

*Blackhawk Dev., LLC v. Krusinski Constr. Co.*,
　　2022 U.S. Dist. LEXIS 98093 (S.D.N.Y. June 1, 2022)....................................11, 15

*China Agritech, Inc. v. Resh*,
　　584 U.S. 732 (2018)..........................................................................................1, 2, 9

*Christians of Cal., Inc. v. Clive Christian N.Y.*,
　　2014 U.S. Dist. LEXIS 98066 (S.D.N.Y. July 18, 2014) ......................................15

*Clune v. Barry*,
　　2023 U.S. Dist. LEXIS 65413 (S.D.N.Y. Apr. 13, 2023)................................. 14-15

*Cook v. City of New York,*
　　243 F. Supp.3d 332 (E.D.N.Y. 2017) .................................................................11

*Crown, Cork & Seal Co. v. Parker*,
　　462 U.S. 345 (1983).....................................................................................1, 9, 13

*Daniels v. Traditional Logistics & Cartage, LLC*,
　　2022 U.S. Dist. LEXIS 140291 (W.D. Mo. Aug. 8, 2022)....................................16

*Decastro v. City of New York*,
　　2020 U.S. Dist. LEXIS 153037 (S.D.N.Y. Aug. 24, 2020)....................................13

*Doe v. Indyke*,
　　2025 U.S. Dist. LEXIS 161045 (S.D.N.Y. 2025).................................................16

*Duling v. Gristede's Operating Corp.*,
　　265 F.R.D. 91 (S.D.N.Y. 2010) ...........................................................................19

*Enzymotec Ltd v. NBTY, Inc.*,
　　754 F. Supp. 2d 527 (E.D.N.Y. 2010) .................................................................14

*Giovanniello v. ALM Media, LLC*,
　　726 F.3d 106 (2d Cir. 2013)...........................................................................10, 12

*Grace v. Rosenstock*,
　　228 F.3d 40 (2d Cir. 2000)..................................................................................15

*Guy v. Ford Storage & Moving Co.*,
   2019 U.S. Dist. LEXIS 241564 (S.D. Iowa Oct. 17, 2019) ............................................ *passim*

*Hargrove v. Sleepy's LLC*,
   2019 U.S. Dist. LEXIS 221933 (D.N.J. May 10, 2019) (rev'd on other
   grounds, 974 F.3d 467 (3d Cir. 2020)) ................................................................. 10-11, 14, 17

*JPMorgan Chase Bank N.A. v. IDW Grp., LLC*,
   2009 U.S. Dist. LEXIS 39858 (S.D.N.Y. May 12, 2009) ...................................................16

*Lee v. HDR Glob. Trading Ltd.*,
   347 F.R.D. 633 (S.D.N.Y. 2024) .....................................................................................19

*Luna v. Del Monte Fresh Produce (Southeast), Inc.*,
   2009 U.S. Dist. LEXIS 115620 (N.D. Ga. Dec. 10, 2009) ..........................................10, 18

*Michalek v. Amplify Sports & Entm't LLC*,
   2012 U.S. Dist. LEXIS 85727 (S.D.N.Y. June 20, 2012) .....................................................18

*Permatex, Inc. v. Loctite Corp.*,
   2004 U.S. Dist. LEXIS 10953 (S.D.N.Y. 2004) ..................................................................14

*Salomon v. Adderley Indus., Inc.*,
   960 F. Supp. 2d 502 (S.D.N.Y. 2013) ..........................................................................11, 15

*Sapon v. Cherry Hill Mkt. Corp.*
   2014 U.S. Dist. LEXIS 136193 (E.D.N.Y. Sep. 25, 2014) .......................................... *passim*

*Scott v. Chipotle Mexican Grill, Inc.*,
   300 F.R.D. 193 (S.D.N.Y. 2014) .....................................................................................14

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ...........................................................................................11

*Uddin v. Radio Shack, Inc.*,
   2013 U.S. Dist. LEXIS 58952 (C.D. Cal. Apr. 22, 2013) ....................................10, 16, 18-19

*United States v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
   889 F.2d 1248 (2d Cir. 1989) ...........................................................................................15

*Voilas v. GMC*,
   173 F.R.D. 389 (D.N.J. 1997) ..................................................................................... 10-11

*Williams v. Epic Sec. Corp.*,
   358 F. Supp. 3d 284 (S.D.N.Y. 2019) ...............................................................................11

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ..........................................................................................................11

Fed. R. Civ. P. 20(a)(1) ..........................................................................................................11

Fed. R. Civ. P. 21 ................................................................................................................11

Fed. R. Civ. P. 23(f) .............................................................................................................7

## INTRODUCTION

Given the Court's recent denial of class certification, Plaintiff LSTC seeks leave to amend the complaint to add ten would-be class members as individual plaintiffs in this litigation (the "Prospective Plaintiffs"). Each of the Prospective Plaintiffs participated in the SHOP/CL Orders that Citigroup improperly executed on March 18, 2022. They assert the same claims against Citigroup based on the exact same underlying events. The Court should allow these would-be class members to join this case.

From the outset of this litigation, Defendant Citigroup has been on notice of the claims that the proposed class members have against it arising from the SHOP/CL Orders. Plaintiff LSTC pressed for early resolution of class certification and diligently sought to brief the issue at every turn. Citigroup consistently insisted that class certification be delayed and decided late in the case. While Citigroup acknowledged that class certification is "ordinarily considered prior to summary judgment," it took the position that class certification in this case should be delayed until after the Court's decision on all dispositive motions. Citigroup urged the Court to adopt this approach because it was Citigroup's explicit preference. Having obtained its desired timeline and delayed class certification until the last possible procedural moment, Citigroup should not now weaponize its own preferred sequencing to prevent would-be class members from joining as individual plaintiffs at the first practical time to do so.

The Supreme Court has made clear that absent class members may reasonably rely on the class-action mechanism, await a ruling on class certification, and, in the event certification is denied, then elect to join the action on an individual basis. That is the rationale of the Supreme Court's tolling doctrine in *American Pipe*, *Crown, Cork & Seal*, and *China Agritech*: until the Court decides class certification, putative class members need not preemptively move to inject their individual claims into the litigation. This is designed to avoid the inefficiencies of absent

class members filing "protective motions to intervene or to join in the event that a class was later found unsuitable." *China Agritech*, *Inc. v. Resh*, 584 U.S. 732, 736 (2018). That is precisely what the Prospective Plaintiffs did here. And within weeks of this Court's denial of class certification, LSTC sought to amend the complaint to add would-be class members.

Having diligently sought class certification throughout this action and then promptly acting to join would-be class members after the Court's denial of class certification, Plaintiff demonstrates the requisite good cause to allow the proposed amendment to the complaint at this juncture. The Court's liberal standard for amending the pleadings to join additional plaintiffs is also easily met. Citigroup cannot credibly claim that Plaintiff engaged in undue delay or bad faith. To the contrary, if Citigroup had not repeatedly opposed LSTC's efforts to have class certification decided earlier, the parties and the Court would have been positioned to address the joinder of individual plaintiffs long ago.

Nor can Citigroup establish undue delay or substantial prejudice, as it must to defeat this motion. Citigroup cannot claim surprise: it has always known that the absent class members have claims against it and that it would face them on a class, or individual, basis. Citigroup has had every incentive and opportunity to litigate this case with its complete exposure in view. Citigroup has taken extensive discovery on the merits of this case from the parties and individuals directly involved in the underlying events. As Citigroup concedes, the proposed class members had no involvement in the events of March 18, 2022. They, therefore, do not have meaningful information concerning the underlying facts of this case. Incremental discovery from the Prospective Plaintiffs, if any, should be narrow, quite limited, and can be completed in an efficient and timely manner well before trial. This does not create undue prejudice, particularly given that the next alternative to the Prospective Plaintiffs joining the present action is the filing of separate and duplicative lawsuits, which would be inefficient and wasteful for all parties and the Court.

Granting this motion for leave to amend the complaint provides the most economical, efficient, and fair avenue for the Prospective Plaintiffs to vindicate their individual claims against Citigroup in light of the Court's denial of class certification, and there is no compelling reason to preclude them from doing so. Accordingly, the Court should grant this motion.

## BACKGROUND

### A.  The Events of March 18, 2022[1]

On March 18, 2022, the Growth Equity Strategies team ("GES Team") at Loomis, Sayles & Company, L.P. ("Loomis"), a non-party and SEC-registered investment advisor, instructed defendant Citigroup Global Markets, Inc. ("Citigroup") to purchase 780,856 shares of Shopify, Inc. ("SHOP") stock and to sell 5,236,139 shares of Colgate-Palmolive Company ("CL") stock (collectively, the "SHOP/CL Orders"). Dkt. 146-25. The GES Team issued a single set of trade instructions to Citigroup for the SHOP/CL Orders on behalf of LSTC and various trusts, funds, and wrap fee program participants. Dkt. No. 193-5 at 45:7-46:8. The instructions were for Citigroup to use its informed discretion to determine a reasonable "slice" of shares that could be placed as market-on-close orders without materially impacting price, and to use its discretion to trade the remaining shares in the best way possible. Dkt. 123-23 at 18:30:11, 18:31:16. The GES team explicitly stated that the orders "[d]o not have to be complete," which directed Citigroup to refrain from completing the orders if they could not be executed without materially impacting the price. *Id.*

Citigroup, however, did not abide by the instructions for the SHOP/CL Orders or its duty of best execution. Citigroup conducted no meaningful analysis and, in the face of information that

---

[1] The facts of this case have been thoroughly briefed for the Court through dispositive motions and class certification. Dkt. 36, 42, 43, 121, 132, 138, 164, 171, 183. Plaintiff briefly summarizes those facts here.

the orders would dominate and overwhelm the closing auction, dumped 100% of the SHOP/CL Orders into the auction as "market-on-close" orders. *See* Dkt. 132 at 6. Citigroup's actions flooded the market and caused price dislocations in both SHOP and CL as the market adjusted for the large imbalances between supply and demand. Dkt. 165-3, ¶¶ 91-92, 106-116. Citigroup's actions resulted in over $70 million in losses, which were shared among all GES accounts participating in the SHOP/CL Orders, including the accounts held by LSTC and the Prospective Plaintiffs that now seek to join this case. Dkt. 165-1, ¶¶ 119, 121.

**B. Procedural History**

On August 6, 2022, LSTC filed the Class Action Complaint on behalf of itself and a proposed class of account and sub-account holders who were injured by Citigroup (the "Complaint"). Dkt. 1. From the outset, and again at each milestone in this case, LTSC sought to move for class certification. At each juncture, however, Citigroup urged delay and advocated for a schedule pursuant to which class certification would be decided late in the case.

On October 3, 2022, less than two months after filing the Complaint, LSTC submitted a pre-motion letter requesting to brief class certification. Dkt. 24. Citigroup opposed on the basis that class certification should be decided after discovery. Dkt. 28. The Court allowed Citigroup's request, noting that "Defendant requested the opportunity to take fact discovery before responding to the motion for class certification." Dkt. 33.

On November 16, 2022, Citigroup moved to dismiss the Complaint. Dkt. 35. Citigroup did not dispute that it entered into a contract governing the SHOP/CL Orders and acknowledged that the trade instructions to Citigroup form the basis of that contract. Dkt. 36 at 25. Rather, Citigroup argued that the trade instructions clearly directed Citigroup to dump the entirety of the SHOP/CL Orders into the closing auction and that it simply complied with that directive. *Id.*

The parties engaged in substantial merits and class discovery in 2022 and 2023. Dkt. 165,

¶ 4.[2] Citigroup served extensive discovery requests on LSTC including requests for documents concerning the proposed class. *Id.* It also served broad subpoenas on Loomis and 16 absent class members. *Id.* The Court held that much of the information Citigroup sought from the absent class members was protected by the common interest and work product doctrines. Dkt. 88 at 4. Loomis agreed to produce the vast majority of documents sought by the subpoenas served on the absent class members. *See* Dkt. 165, ¶ 5; Dkt. 86. Citigroup deposed the key witnesses involved in the SHOP/CL Orders and representatives of both LSTC and Loomis. Dkt. 165, ¶ 6.

On June 27, 2023, upon completion of discovery, LSTC renewed its request to move for class certification, noting that Citigroup had completed the discovery it claimed necessary. Dkt. 89. Citigroup again sought to delay class certification, arguing that the "Court should defer consideration of class certification until after resolution of dispositive motions," including the then-pending, converted motion for summary judgment and Citigroup's anticipated second motion for summary judgment. Dkt. 93. Over LSTC's objection, Citigroup asserted that further delaying class certification "would be more efficient for the parties and the Court" and that this sequencing was "particularly appropriate" given that it was Citigroup's specific preference. *Id.*

On July 28, 2023, the Court deferred briefing on class certification pending mediation. Dkt. 106. The same day, the Court denied Citigroup's as-converted motion and declined to dismiss Plaintiff's claims. Dkt. 105. The Court held that a reasonable jury could find "that Loomis granted Citigroup full discretion (i.e., was deferring to Citigroup's judgment) to trade some or all of the SHOP and CL shares with MOC orders, LOC orders, or not to trade the shares at all." *Id.* at 3.

On October 6, 2023, after mediation, LSTC requested that the Court set a briefing schedule

---

[2] On March 13, 2023 this Court entered an amended scheduling order setting deadlines for merits and class discovery. Dkt. 74. That scheduling order also provided that "[n]o additional parties may be joined after December 12, 2022, without leave of court." *Id.*

whereby the motion for class certification would be briefed in November 2023 and Citigroup's motion for summary judgment would either be briefed simultaneously with or after certification. Dkt. 114. Citigroup, yet again, sought to delay class certification, asserting that simultaneous briefing of summary judgment and class certification would be "inefficient and impose unnecessary burdens on the parties and the Court." Dkt. 115. But, instead of tackling class certification first, Citigroup took the atypical position that briefing on class certification should follow summary judgment. *Id.* ("[A]lthough class certification is ordinarily considered prior to summary judgment, 'the purpose of early certification is *for the benefit of defendants*' and so 'a defendant may waive this protection and move for judgment on the merits before a decision on certification is made.'" (emphasis in original) (citations omitted)). LSTC contended that Citigroup's proposal would "needlessly delay the progression of this case towards trial." Dkt. 114. The Court allowed Citigroup's preferred sequencing, setting briefing on Citigroup's motion for summary judgment and deferring LSTC's motion for class certification. Dkt. 116.

On November 1, 2023, Citigroup moved for summary judgment, conceding that it entered into a contract governing the SHOP/CL Orders. Dkt. 119, 121 at 12. Citigroup argued that it complied with the instructions and exercised reasonable care. Dkt. 121 at 16, 19. On September 26, 2024, the Court denied Citigroup's motion for summary judgment on the breach of contract claim and held that the claim should proceed to trial. Dkt. 157. The Court noted that the parties do not dispute the existence of a contract and concluded that Citigroup's duty of best execution is an implied term of the contract. Dkt. 158 at 4, 8. On these grounds, the Court granted dismissal on the breach of fiduciary duty claim as duplicative based on the fact that "the parties do not dispute the existence of a contract." *Id.* at 10.

Only at this point did briefing on class certification proceed. On October 21, 2024, LSTC submitted its motion to certify the class. Dkt. 163. On November 20, 2024, Citigroup submitted

its opposition, Dkt. 171. And on January 10, 2025, LSTC completed its briefing and the motion was fully submitted to the Court. Dkt. 183.

On September 2, 2025, this Court denied class certification, dkt. 189, and set trial for December 2025, dkt. 190. On September 16, 2025, LSTC petitioned the Court of Appeals for the Second Circuit for permission to file an interlocutory appeal of the Court's order denying class certification pursuant to Fed. R. Civ. P. 23(f). Pet. for Permission to Appeal, Dkt. No. 25-2266, ECF 1 (Sept. 16, 2025). On September 26, 2025, Citigroup opposed that request. Citigroup's Answer in Opp'n., Dkt. No. 25-2266, ECF 5 (Sept. 26, 2025). That petition remains pending.

On September 15, 2025, the Parties submitted a joint letter to this Court requesting a new trial date in early 2026. Dkt. 195. In light of LSTC's pending appeal, the parties stated that "setting a firm trial date [in 2026]… will thus likely provide more clarity at trial regarding the status of this case as an individual action." *Id*. On September 16, 2025 the Court granted the Parties' joint request and set a firm trial date for April 27, 2026. Dkt. 196.

On September 22, 2025, twenty days after the denial of class certification, LSTC informed Citigroup that it would seek leave to amend the Complaint to add plaintiffs and informed the Court of its intention the next day. Dkt. 197. After LSTC submitted its pre-motion letter, dkt. 199, and Citigroup responded, dkt. 201, on October 20, 2025, this Court allowed briefing on the present motion, dkt. 202.

C. **The Proposed Amendment to Add Ten Would-Be Class Members as Plaintiffs**

LSTC seeks leave to amend the Complaint to add ten would-be class members as individual plaintiffs to this action. The proposed amendments are reflected in redline form in Exhibit A and the proposed Amended Complaint is attached as Exhibit B. This is the first time LSTC seeks to amend the Complaint.

Each of the Prospective Plaintiffs is the real party in interest for the accounts that

participated in the SHOP/CL Orders on March 18, 2022. Dkt. 164 at 5; Dkt. 166-10. Loomis acted

as investment advisor and agent for each of the Prospective Plaintiffs in giving Citigroup the trade

instructions for the SHOP/CL Orders. Dkt. 166-11; Dkt. 164 at 7. Accordingly, just as LSTC has

a contract with Citigroup governing the SHOP/CL Orders, so too does each of the Prospective

Plaintiffs with respect to each of their affected accounts.[3] Citigroup then executed trades in SHOP

and CL for each of the them in a manner that violated the contractual trade instructions and

Citigroup's duty of best execution. Citigroup then allocated the shares at issue to the affected

accounts of the Prospective Plaintiffs.

As further detailed in the Proposed Amended Complaint attached as Exhibit B, the

Prospective Plaintiffs are:

1.  Heights Merchandise, LLC

2.  Clearview Preneed, LLC

3.  Trident Preneed, LLC

4.  NOLA Total Return Perpetual Care, LLC

5.  Natixis International Funds (Lux) I

6.  TM Natixis Investment Funds U.K. ICVC

7.  Natixis Investment Managers International

8.  Trustee of Frederick County Master Trust

---

[3] Citigroup has conceded that a contract governs the SHOP/CL Orders. Dkt. 151 at 12. The Court found on summary judgment that the communications between Citigroup and Loomis on March 18, 2022 formed a contract that governs the SHOP/CL Orders and that Citigroup's duty of best execution is an implied term of the contract. Dkt. 158 at 4-5. Premised on this finding, the Court then dismissed LSTC's breach of fiduciary duty claim as duplicative. *Id.* at 10. Citigroup also conceded, as it must, that it is in contractual privity with all of the identified accounts with which it settled the SHOP/CL trades, which necessarily includes the Prospective Plaintiffs. Dkt. 151 at 25. However, in an abundance of caution, the Amended Complaint includes a breach of fiduciary duty claim by the Prospective Plaintiffs to preserve such claims should Citigroup attempt to undo its previous concession as to the existence of a contract for the SHOP/CL Orders.

9.  Trustees of the Columbia Funds Series Trust I

10. Trustees of the Columbia Funds Variable Series Trust II

As alleged in the Proposed Amended Complaint, each Prospective Plaintiff has citizenship diverse from Citigroup. Together, the Prospective Plaintiffs suffered over $13 million in losses as a result of Citigroup's failure to properly execute the SHOP/CL Orders in accordance with the trade instructions and its duty of best execution.

## ARGUMENT

### I.  The Supreme Court Has Recognized that Absent Class Members Are Entitled to Await Resolution of Class Certification Before Moving to Join.

The Supreme Court recognizes that absent class members are entitled to await determination of class certification before acting on their individual claims, including moving to join the existing litigation after denial of class certification. Its decision in *Am. Pipe & Const. Co. v. Utah* confirms that the filing of a putative class action tolls the statute of limitations for all absent class members and establishes the principle that individuals may reasonably rely on the class mechanism rather than moving to pursue their claims on an individual basis. 414 U.S. 538, 553 (1974). The Supreme Court's decision in *Crown, Cork & Seal* makes clear that after denial of certification, absent members "may choose to file their own suits or to intervene as plaintiffs in the pending action." 462 U.S. 345, 354 (1983). More recently, in *China Agritech, Inc. v. Resh*, the Supreme Court again acknowledged absent class members' right to "join the action individually or file individual claims if the class fails." 584 U.S. 732, 736 (2018).

Any suggestion that LSTC or the Prospective Plaintiffs who now aim to join this case were required to move prior to this Court's decision denying class certification undercuts the very rationale of *American Pipe* and its progeny: avoiding the inefficiencies of potential class members being "induced to file protective motions to intervene or to join in the event that a class was later

9

found unsuitable." *Id*. Indeed, the Second Circuit has recognized that "[t]he American Pipe rule is based on the idea that under Rule 23 of the Federal Rules of Civil Procedure, potential class members are protected by the commencement of a putative class action . . . they need not file an action or move to intervene during the pendency of class certification." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013).

Against this backdrop, courts routinely allow would-be class members to join after the denial of class certification.[4] *See, e.g., Sapon v. Cherry Hill Mkt. Corp.* 2014 U.S. Dist. LEXIS 136193, at *6 (E.D.N.Y. Sep. 25, 2014) (allowing amendment to add former class members near "final stage" of the litigation); *Guy v. Ford Storage & Moving Co.*, 2019 U.S. Dist. LEXIS 241564, at *12 (S.D. Iowa Oct. 17, 2019) (allowing amendment to add fourteen former putative class members following denial of class certification); *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 2009 U.S. Dist. LEXIS 115620, *14 (N.D. Ga. Dec. 10, 2009) (allowing amendment to add fifty two individual plaintiffs following denial of class certification); *Uddin v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 58952, at *24 (C.D. Cal. Apr. 22, 2013) (allowing amendment to add sixteen additional plaintiffs following denial of class certification); *Voilas v. GMC*, 173 F.R.D. 389, 399-400 (D.N.J. 1997) (allowing amendment to add 176 new plaintiffs following denial of

---

[4] Courts recognize that a motion for leave to amend a complaint is a viable procedural mechanism to add plaintiffs following class certification, in addition to intervention. *See Voilas v. GMC*, 173 F.R.D. 389, 394 (D.N.J. 1997) ("[W]hile it may be true that intervention will generally be the means by which litigants who are denied certification as a class may seek to join a litigation, existing plaintiffs are also entitled to join additional plaintiffs who were denied class certification, via a motion to amend."); *see also Guy v. Ford Storage & Moving Co.*, 2019 U.S. Dist. LEXIS 241564, at *4 (S.D. Iowa Oct. 17, 2019) (holding that the Rule 16 "good cause" standard applies in the same way to a motion to intervene or to amend); *Hargrove v. Sleepy's LLC*, 2019 U.S. Dist. LEXIS 221933, at *23-26 (D.N.J. May 10, 2019) (rev'd on other grounds, 974 F.3d 467 (3d Cir. 2020)) (denying motion to intervene but granting equivalent motion to amend complaint to join proposed intervenors).

class certification); *Hargrove v. Sleepy's LLC,* 2019 U.S. Dist. LEXIS 221933, at *26-27 (D.N.J. May 10, 2019) (rev'd on other grounds, 974 F.3d 467 (3d Cir. 2020)) (allowing amendment to add new plaintiffs following denial of class certification and close of discovery).

## II.    The Proposed Amendment to Add the Prospective Plaintiffs Should Be Granted.

Pursuant to the Federal Rules, joinder of plaintiffs is appropriate where they assert a right to relief arising out of the same transaction, Fed. R. Civ. P. 20(a)(1), and "joinder of additional parties is appropriate 'at any time, on just terms.'" *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 21). These principles are reflected in Rule 15's liberal standard for amending the pleadings, which provides that "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Requests to amend should only be denied if there is undue delay, bad faith, futility, or prejudice. *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 293-94 (S.D.N.Y. 2019). "'Mere delay [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Id.* at 294 (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). The non-movant, "'bears the burden of demonstrating that substantial prejudice would result if the proposed amendment were granted.'" *Blackhawk Dev., LLC v. Krusinski Constr. Co.*, 2022 U.S. Dist. LEXIS 98093, at *6-7 (S.D.N.Y. June 1, 2022) (quoting *Cook v. City of New York*, 243 F. Supp.3d 332, 355 (E.D.N.Y. 2017)).

Where adding new plaintiffs requires modification of a previously entered scheduling order, the movant must show good cause. *Blackhawk Dev., LLC,* 2022 U.S. Dist. LEXIS 98093, at *6-7. "Whether good cause exists turns on the diligence of the moving party" and the movant establishes good cause when he "demonstrate[s] that he has been diligent, meaning that despite his having exercised diligence, the applicable deadline could not have been reasonably met." *Salomon*, 960 F. Supp. 2d at 507 (cleaned up). Courts have also recognized that class certification constitutes

a change in circumstances that satisfies the good cause standard. *Guy*, 2019 U.S. Dist. LEXIS 241564, at *5.

Plaintiff's motion to amend the Complaint is supported by good cause and Citigroup can establish neither undue delay nor substantial prejudice. The balance of interests in this case weigh conclusively in favor of allowing this motion.

A. Good Cause Exists Because LSTC Has Exercised Diligence Throughout this Case and Denial of Class Certification Constitutes a Change in Circumstance.

Good cause exists here because LSTC has exercised diligence throughout this case and the Court's denial of class certification on September 2, 2025 provides a change in circumstance that was not known to LSTC prior to the Court's order.

It is incontrovertible that LSTC has been diligent. It pursued class certification early in this case, even before Citigroup's motion to dismiss, and has repeatedly pressed for early adjudication of class certification. LSTC first sought briefing on class certification in October 2022, six months before the Court entered the operative Scheduling Order. LSTC requested class certification briefing again in June 2023 after the close of discovery, in October 2023 after the Court denied Citigroup's as-converted motion for summary judgment, and finally in October 2024 after the Court decided Citigroup's motion for summary judgment. At each turn, Citigroup urged delay and made clear its preference to have class certification decided late in the case. Despite LSTC's best efforts and at Citigroup's behest, class certification was not fully briefed for the Court until January 10, 2025, as one of the last phases of this litigation before trial.

The Court denied class certification on September 2, 2025, and only then did the proposed amendment to add new plaintiffs become necessary. *Sapon*, 2014 U.S. Dist. LEXIS 136193, at *1 (the need for plaintiff's request to amend the complaint "stemmed from the Court's denial of the motion for class certification"); *see also Giovanniello*, 726 F.3d at 117 (individual class members

12

"need not file an action or move to intervene during the pendency of class certification") (quoting *Crown, Cork*, 462 U.S. at 350)); *Guy*, 2019 U.S. Dist. LEXIS 241564, at *3-4 ("putative class members… [have] no reason to join as plaintiffs to assert their individual claims… until class certification [is] denied" and "it is unreasonable to []expect[] them to do so" earlier). LSTC and the Prospective Plaintiffs simply did not and could not have known whether joinder would be necessary or appropriate until the Court decided class certification.[5]

Citigroup cannot credibly dispute this. Rather, having successfully petitioned for delay of class certification, Citigroup now shifts course, claiming that LSTC should have moved to amend its complaint to add the Prospective Plaintiffs as a "contingency plan years ago" before it had the opportunity to brief class certification and before the Court ruled on class certification based on fulsome briefing. This contravenes Supreme Court precedent designed to prevent the very inefficiencies that Citigroup suggests LSTC should have pursued.[6] *See supra* at 9-12. LSTC cannot

---

[5] This is nothing like the situation in *Decastro v. City of New York*, cited by Citigroup in its letter opposing Plaintiff's request to make this motion. Dkt. 201. The court there denied a motion to amend to add new plaintiffs to serve as class representatives for a subclass, noting that the motion came three years after the original named plaintiffs representing the subclass had accepted offers of judgment, thus mooting their claims. 2020 U.S. Dist. LEXIS 153037, at *17-25 (S.D.N.Y. Aug. 24, 2020). The court found that the plaintiffs were "well aware that such judgments . . . did moot the claims of those plaintiffs" three years earlier and that new named plaintiffs would be necessary to represent the subclass, yet inexplicably waited until three years after the original named plaintiffs were effectively dismissed from the case. *Id.* Here, in contrast, leave was sought to file this motion less than a month after denial of class certification.

[6] Citigroup contends that a defendant "voic[ing] concern about the unsuitability of [a] case as a class action" (a position that almost every defendant to a class action takes), and the Court preliminarily acknowledging those concerns without the benefit of meaningful briefing, triggers a requirement for the plaintiff to immediately pursue alternatives, such as joinder. This does not pass muster. Prematurely asking this Court to join individual plaintiffs is fundamentally incompatible with class certification and would destroy the efficiencies of the class action procedure. *See Guy*, 2019 U.S. Dist. LEXIS 241564, at *4 (citing *American Pipe*, 414 U.S. at 551). Defendants routinely oppose class certification, yet the Supreme Court has made clear that joinder need not happen until after class certification is denied.

be accused of lacking diligence where the timing of its motion to amend was a consequence of Defendant's repeated delays. *See Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) (granting motion for leave to amend and holding that "plaintiffs adequately demonstrated diligence" where their delay in obtaining the class list relied upon to amend was in part due to defendant's "three motions to challenge" the Court's certification order).

Upon the denial of class certification, LSTC acted diligently in moving to amend the Complaint to add would-be class members as named plaintiffs. LSTC filed its pre-motion letter as required by this Court's rules within three weeks of the Court's decision on class certification. Dkt. 199. This is timely. *See Sapon*, 2014 U.S. Dist. LEXIS 136193, at *3 (finding "absolutely no undue delay" where amended complaint was filed nearly a year after denial of class certification and over a month after the denial of reconsideration); *Hargrove*, 2019 U.S. Dist. LEXIS 221933, at *23-26 (holding motion to intervene brought one month after denial of class certification to be timely); *see also Enzymotec Ltd v. NBTY, Inc*., 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) ("filing a motion to amend within two months of acquiring the information is sufficient to show diligence"); *Permatex, Inc. v. Loctite Corp*., 2004 U.S. Dist. LEXIS 10953, at *9 (S.D.N.Y. June 17, 2004) (finding diligence where plaintiffs moved to amend almost two months after new information).

The Pre-Trial Schedule does nothing to change this analysis. Trial is scheduled to begin on April 27, 2026, approximately six months from the filing of this motion. Dkt. 198. The first deadline on that schedule is the submission of *Daubert* motions on January 30, 2026, which is approximately three months from the filing of this motion. *Id.* There is no reason that these dates should be affected by the joinder of additional plaintiffs.

   B.  <u>Citigroup Cannot Establish Undue Delay or Substantial Prejudice.</u>

Having demonstrated good cause, leave to amend the Complaint should only be denied if Citigroup can establish undue delay, bad faith, futility, or substantial prejudice. *See Clune v. Barry*,

2023 U.S. Dist. LEXIS 65413, at *15-16 (S.D.N.Y. Apr. 13, 2023) ("The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'") (quoting *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016); *Blackhawk Dev., LLC*, 2022 U.S. Dist. LEXIS 98093, at *13 (same). "'Mere delay [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Christians of Cal., Inc. v. Clive Christian N.Y.*, 2014 U.S. Dist. LEXIS 98066, at *13 (S.D.N.Y. July 18, 2014) (quoting *Fluor Corp.*, 654 F.2d at 856).

Citigroup cannot establish any undue delay or bad faith by LSTC. As explained above, LSTC moved to join the Prospective Plaintiffs promptly following the Court's denial of class certification. *See supra* at 12-15. This is not the type of "inordinate delay" with "no satisfactory explanation" that might defeat amendment. *Contrast Grace* v. *Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000). Rather, that class certification was decided late in this litigation and as the final step before trial is principally of Citigroup's own making. As such, Citigroup's displeasure with the timing of the proposed amendment should not foreclose it.

Nor can Citigroup demonstrate undue prejudice. "Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis." *Agerbrink*, 155 F. Supp. 3d at 455 (S.D.N.Y. 2016). Where, as here, the non-movant "will not have to expend significant additional resources because the same claims in the original complaint are being alleged [by] the new parties," there is no substantial prejudice. *See Salomon*, 960 F. Supp. 2d at 508. This is true even where some additional discovery may follow the amendment. *See id.* ("further (limited) discovery itself is not an adequate ground to deny an amendment to a complaint"); *see also United States v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (**"**[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a

pleading."); *JPMorgan Chase Bank N.A. v. IDW Grp., LLC.*, 2009 U.S. Dist. LEXIS 39858, at *11-13 (S.D.N.Y. May 12, 2009) (finding no undue prejudice, even after discovery had concluded); *Uddin*, 2013 U.S. Dist. LEXIS 58952, at *23 ("defendant will not be unduly prejudiced by having to conduct discovery as to each individual plaintiff in this action").

A claim of prejudice is even less compelling where the alternative to joining the parties in the instant action is filing of separate and duplicative lawsuits. *See Doe v. Indyke*, 2025 U.S. Dist. LEXIS 161045, at *11 (S.D.N.Y. Aug. 19, 2025) (no prejudice where non-movant "fail[ed] to explain… how denying leave to amend would be any *more* prejudicial than their having to engage in precisely the same course of action if [plaintiff] filed a new lawsuit") (quoting *Disability Rts. N.Y. v. New York State*, 2024 U.S. Dist. LEXIS 165461, at *6 (E.D.N.Y. Sept. 13, 2024); *Sapon*, 2014 U.S. Dist. LEXIS 136193, at *3-4 (where "new plaintiffs would have been free to simply file new cases asserting their claims" amending the complaint "provides a far more efficient method of processing those claims"); *Daniels v. Traditional Logistics & Cartage, LLC*, 2022 U.S. Dist. LEXIS 140291, at *12-13 (W.D. Mo. Aug. 8, 2022) (joining plaintiffs "is certainly less burdensome than Defendant would face if each Proposed Plaintiff instead filed separate suits against Defendants"); *Guy*, 2019 U.S. Dist. LEXIS 241564, at *8 ("whether filed elsewhere, kept separate here, or consolidated, [defendant] would be faced with conducting the same discovery it says it must do if the former class members are joined to this lawsuit").

Here, any prospect of limited additional discovery does not establish undue prejudice. *First*, Prospective Plaintiffs' claims ***are precisely the same*** as the class claims asserted by LSTC. They are based on the same trade, on the same order, at the same time, involving the same individuals. Citigroup has already obtained extensive discovery on the underlying facts that serve as the basis of the Prospective Plaintiffs' claims, including production of documents from and depositions of the individuals that were involved in the events of March 18, 2022. *See* Dkt. 71, 73.

16

Defendant also obtained discovery related to the proposed class members, including the Prospective Plaintiffs, that suffered losses. Dkt. 164 at 8. Indeed, if the class had been certified, Citigroup would be trial ready at this point on the claims of all class members, including those seeking to be added here. For these reasons, in similar circumstances, courts have permitted amendment to add plaintiffs even where a case is well underway. *See Guy*, 2019 U.S. Dist. LEXIS 241564, at *7 (allowing amendment after close of discovery); *Hargrove*, 2019 U.S. Dist. LEXIS 221933, at *23-26 (same).

*Second*, to the extent any additional discovery as a result of the proposed amendment is required, and it very well may not be, such discovery will be discrete and limited. Citigroup concedes that the putative class members, which included the Prospective Plaintiffs, "had no involvement in the underlying facts." Dkt. 171 at 1. Citigroup cannot evade this concession; it makes the point no fewer than four times in its memorandum opposing class certification. *See id.* at 1-3, 16. As a practical matter, the Prospective Plaintiffs do not have any meaningful information concerning the underlying facts of the claims. Indeed, if Citigroup thought they did, it could have sought discovery from them as it did from 17 other absent class members.

Jurisdictional discovery, if any, should be narrow and expedient. The Proposed Amended Complaint includes detailed factual allegations to establish diversity and, to the extent necessary, Prospective Plaintiffs can provide discovery sufficient to show diversity jurisdiction in short order. There is no reason this should delay the trial date set for April 27, 2026. Given that the parties completed extensive fact discovery in this case in less than six months pursuant to this Court's Scheduling Order, s*ee* dkt. 74, the nearly six months left before trial is certainly sufficient to complete additional limited discovery before trial. *See Sapon,* 2014 U.S. Dist. LEXIS 136193, at *6 ("three months [was] ample time to complete the necessary discovery" after amending complaint to add would-be class members after denial of class certification).

*Third*, any additional discovery that Citigroup may claim is necessary as a result of the Proposed Amendment will be far less burdensome than the alternative: facing a parallel action by these same plaintiffs with the same (and, likely, cumulative) discovery. *See infra* 18-19.

C.    The Interests of Justice and Judicial Economy Strongly Favor Amendment.

Even if Citigroup could demonstrate undue prejudice (it cannot), any prejudice must be balanced against the interests of justice and judicial economy. *See Michalek v. Amplify Sports & Entm't LLC*, 2012 U.S. Dist. LEXIS 85727, at *2-5 (S.D.N.Y. June 20, 2012). The balance of interests here strongly supports amendment.

The interests of justice heavily weigh in favor of allowing the Prospective Plaintiffs to join this action. As discussed above, proposed class members are entitled to await a decision on class certification before seeking to join the action as named plaintiff. *See supra* at 9-11. That is precisely the approach that Prospective Plaintiffs took here, and it would be unfair to bar them from now joining this action to vindicate their individual claims. Indeed, Citigroup's own insistence on delaying class certification should not deprive the Prospective Plaintiffs of the most efficient and judicious avenue for their claims. So long as class certification remained pending, the claims of the Prospective Plaintiffs were being advanced through the class mechanism and it would be "unreasonable to have expected them" to join earlier. *Guy*, 2019 U.S. Dist. LEXIS 241564, at *6; *see also Uddin*, 2013 U.S. Dist. LEXIS 58952, at *10 (plaintiff "had no reason [] to seek to add additional individuals as named plaintiffs" while pursuing class certification).

Consolidating these claims in one action also serves the interests of efficiency and judicial economy. *See Sapon,* 2014 U.S. Dist. LEXIS 136193,  at *4 (amending the complaint "provides a far more efficient method of processing" individual claims of former class members than filing new cases); *Luna*, 2009 U.S. Dist. LEXIS 115620, at *13-14 ("[N]o legitimate interest would be served by requiring the opt-In plaintiffs… to file 52 additional lawsuits to pursue [their claims].");

*Uddin*, 2013 U.S. Dist. LEXIS 58952, at *13-14 ("[E]ach of the sixteen new proposed plaintiffs could file a separate case… creating a multiplicity of actions which would be far less manageable."). Each of the Prospective Plaintiffs asserts identical claims against Citigroup premised on the same underlying facts. The fact finder will need to evaluate the GES team's instructions and whether Citigroup failed to follow those instructions and fulfill its duty of best execution to LSTC and the Prospective Plaintiffs. The parties and Court have already expended substantial resources in developing this case and the evidence that has already been produced through discovery will be universal to all of the Prospective Plaintiffs' claims. Requiring Prospective Plaintiffs to file separate and duplicative lawsuits would be inefficient and wasteful. *See Lee v. HDR Glob. Trading Ltd.*, 347 F.R.D. 633, 639 (S.D.N.Y. 2024) (not joining plaintiff with similar claim "would be inefficient and an imprudent waste of judicial resources that would unnecessarily duplicate litigation."); *see also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 101 (S.D.N.Y. 2010) ("The inefficiencies that would result from two independent actions is far greater than any inefficiency that would result from permitting the amendment.").

## CONCLUSION

For the reasons stated herein, LSTC respectfully requests that the Court grant Plaintiff's Motion to Amend Complaint.

Respectfully submitted,

LOOMIS SAYLES TRUST COMPANY, LLC

By its attorneys,

/s/ *Matthew C. Baltay*
Matthew C. Baltay (pro hac vice)
Kenneth S. Leonetti
Leah S. Rizkallah
Amanda S. Coleman
Natalie F. Panariello (pro hac vice)

FOLEY HOAG LLP

1301 Avenue of the Americas
New York, NY 10019

-and-

155 Seaport Blvd.
Boston, MA 02210

Dated: October 29, 2025

## **CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

I hereby certify that the above memorandum of law complies with the word-count limitations set forth in Local Rule 7.1(c) and with Your Honor's Rule III.B.1. The memorandum contains 6,474 words, as calculated by the word-processing system used to prepare the document, excluding the portions identified by Rule III.B.1.

*/s/ Matthew C. Baltay*_____
Matthew C. Baltay